259 F.2d 358
 William Reid LAMB and Glen C. Poynor, doing business as
Poynor and Lamb Trucking; Utah Wholesale Grocery
Company, a corporation; and Load
Service, Incorporated, a
corporation, Appellants,
v.
INTERSTATE COMMERCE COMMISSION, Appellee.
 No. 5838.
 United States Court of Appeals Tenth Circuit.
 Sept. 2, 1958.
 
 Harold N. Wilkinson, Salt Lake City, Utah, for appellants.
 George W. Howard, Denver, Colo. (A. Henry Walter and A. J. Merrill, Washington, D.C., were with him on the brief), for appellee.
 Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 Utah Wholesale Grocery Company[1] is a corporation engaged in the business its name describes throughout Utah, Nevada, Washington, Idaho and Montana. Large volume purchases of merchandise are made by the company in California and its principal transportation problem lies in the one-way haul of groceries from California to points of distribution in the other western states. This appeal searches the question of whether or not Utah Wholesale is functioning as a private carrier in accomplishing the interstate haul through contractual relations with the other appellants, William Reid Lamb and Glen C. Poynor, d/b/a Poynor & Lamb Trucking,[2] and Load Service, Incorporated.[3] The action was initiated by the Interstate Commerce Commission in the District Court for the District of Utah upon allegation that the Trucking Co. was unlawfully engaged as a carrier in interstate commerce. Jurisdiction is admitted under 49 U.S.C.A. 322(b) and Utah Wholesale and Load Service are parties under the authority of 49 U.S.C.A. 42. The trial court, having concluded that the arrangements between appellants constituted an unlawful subterfuge to evade regulation by the Interstate Commerce Commission, granted injunctive relief. The entire matter was submitted to the District Court upon a written stipulation of facts. The trial court's conclusions and findings of ultimate fact are therefore based entirely upon consideration of the stipulated operative facts. In recognition of the importance of the question involved and the necessity of a complete consideration of the operative facts we set out in full the material paragraphs of the stipulation as Appendix A.
 
 
 2
 The parties agreed at pre-trial that the determinative and only question to be submitted to the trial court was:'Who, in truth and in fact, was doing the transportation, Poynor and Lamb, who owned the trucks, or Utah Wholesale Grocery, who wanted its goods shipped?'
 
 
 3
 The trial court found from the stipulated facts that the purpose of defendants in entering into the agreements was to attempt to avoid application of Part II of the Interstate Commerce Act.[4] It held that defendants' acts were an unlawful subterfuge; that the agreed facts of their manner of operation contradicted the written instruments and agreements; that Utah Wholesale was not a private carrier under the Act; that Load Service was not a bona fide agent of Utah Wholesale; that the drivers were not Utah Wholesale employees; that the trucks were never in its possession and control; that the parties had not changed the manner of their operation sufficient to avoid application of the Act; and that Poynor and Lamb were in fact engaged in transporting goods in interstate commerce for compensation in violation of the Act.
 
 
 4
 Upon appeal, the issue remains the same. Simply stated, it is who was transporting the goods in question. Since the legal classification of appellants as typed carriers under the Interstate Commerce Act is a question of law, Scott v. I.C.C., 10 Cir., 213 F.2d 300, 302, to be determined by the factual answer to that question we must first consider the effect to be given in this court to a finding of ultimate fact made by the trial court which is dependent entirely upon consideration of stipulated and undisputed basic facts. It is immediately apparent that in the instant case this court is in as good a position as the trial judge to evaluate the stipulated facts and we have oft-times stated that in such case it is our duty to do so. See United States v. Corporation of the President of The Church of Jesus Christ of Latter Day Saints, 10 Cir., 101 F.2d 156; British America Assur. Co. of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256, and cases cited. But our duty to evaluate the facts does not extend to the right or duty to make an independent evaluation without regard to the findings below. Such would be, in cases such as the instant one, a trial de novo and would effectively destroy a paramount function and responsibility of the trial court. Rather, Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. contemplates that the scope of appellate review is enlarged in such cases to the extent, and only to the extent, that no regard need be given to the opportunity of the trial court to observe the witness. Skinner v. Parnell, 10 Cir., 257 F.2d 345. Although the findings of the trial court and the inferences and conclusions to be drawn therefrom are not entrenched with finality, Rule 52(a) is applicable to our review, United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 542, 92 L.Ed. 746, and the findings should not be disturbed unless found to be 'clearly erroneous.' To be so disturbed the reviewing court must be 'left with the definite and firm conviction that a mistake has been committed.' United States v. U.S. Gypsum Co., supra. We thus must affirm the trial court unless our evaluation of the stipulated facts leaves us with the firm conviction that a mistake has been made.
 
 
 5
 In order to effectuate the regulatory purposes of the Interstate Commerce Act the provisions of that Act should be liberally construed. In A. W. Stickle & Co. v. I.C.C., 10 Cir., 128 F.2d 155, 160, certiorari denied317 U.S. 650, 63 S.Ct. 46, 87 L.Ed. 523, this court stated:
 
 
 6
 'A carrier may not avoid the requirements of Part II, supra, by subterfuge or device, or ny posing as a private carrier when, in substance and reality, he is engaged under individual contracts in transportation by motor vehicle of property in interstate commerce for compensation. Ownership of the commodity transported is not the sole test. The primary test in 203(a)(14) and 203(a) (15)(49 U.S.C.A. 303(a)(14, 15)) is transportation for compensation.' 128 F.2d 160.
 
 The court further stated:
 
 7
 'What the court said in Georgia Truck System, Inc., v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210, 212, is apposite:
 
 
 8
 "We need not indulge here in any of these refinements. It is sufficient for us to say that the invoked statute is a highly remedial one, that its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of interstate or foreign transportation of property on the public highways for hire." 128 F.2d 160.
 
 
 9
 In the Fifth Circuit case cited the contention was made, as here, that the carrier was but leasing motor vehicles and was not engaged in transportation. The court held the contention to be valid in form only. We believe that to be equally true in the instant case. The history of Poynor and Lamb Trucking shows that its essential business is that of transportation, not the rental of motor vehicles. Nor is it a natural function of Utah Wholesale to transport bulk wheat from points in the mountain states to market in California. Utah Wholesale admittedly needs but one transportation service: drayage of its merchandise from California to distribution points in other states. This need could undoubtedly be lawfully met by Utah Wholesale through its actual operation of leased trucks. But the need cannot be filled, free of I.C.C. regulation, by a trucking company performing every single operative function of a contract carrier under the guise of a lease which, though purporting to give form to a five-year period, is destroyed in substance by a provision allowing contractual escape, without cause, by either party, upon fifteen days' notice. Such an arrangement has no substance and lends support to the view that the lease arrangement is but a component part of an over-all plan to frustrate the purposes of interstate commerce regulation through unpermitted evasion rather than by bona fide avoidance of the provisions of the law.
 
 
 10
 In 1955 and continuing until the initiation of this action the integration of the plan to unify an operation in interstate commerce was emphasized by the common ownership and operation of the Trucking Co. and Load Service. Changes have since been made so that Load Service is now independent of the Trucking Co. in both ownership and management. This is a step in the right direction, Interstate Commerce Comm. v. Vincze, D.C., 151 F.Supp. 449, but is insufficient to raise the over-all plan to one of bona fide substance.
 
 
 11
 Since we do not entertain a firm conviction that a mistake has been committed the judgment of the trial court is accordingly affirmed.
 
 Appendix A
 Stipulation of Facts
 
 12
 I. On the dates alleged in the complaint and at all times thereafter, William Reid Lamb and Glen C. Poynor were the owners either individually or as owners in common of over the road motor vehicles and operated during the time mentioned in the complaint as Poynor and Lamb Trucking.
 
 
 13
 II. That Utah Wholesale Grocery Co., is a corporation engaged in the business of wholesale grocery sales in the States of Nevada, Washington, Idaho, and Montana, and purchases large volumes of its merchandise in the State of California. That A. B. Smith is the general manager and an executive officer of said corporation in charge of its business.
 
 
 14
 III. Load Service, Incorporated, is a corporation formed in 1955 by William Reid Lamb and Glen C. Poynor, who owned the majority of stock and the controlling interest of the corporation. It was organized for the purpose, among others, of dealing as a broker, and arranging for the transportation by motor vehicles of commodities exempt from regulation under Part II of the Interstate Commerce Act, and to give services to shippers and transporters of such exempt commodities. That no authority or licenses is required by the said Interstate Commerce Act to engage in such operations or business. That William Reid Lamb was active in the management of both the truck use of Poynor and Lamb Trucking and Load Service, Incorporated, at all times mentioned in the complaint, as hereinafter set forth.
 
 
 15
 IV. That on or about March 28, 1955; June 6, 1955; and 26 of April, 1955, Poynor and Lamb executed instruments entitled 'Lease of Motor Vehicle Equipment' eleven vehicles, consisting of tractor and trailers, were referred to and described therein. Said instruments are attached hereto as exhibits and marked 'A', 'B', and 'C'.
 
 
 16
 V. That Poynor and Lamb or Load Service, Incorporated, or any of the individuals interested in said defendants had any authority from the Interstate Commerce Commission to engage in the transportation of property in interstate commerce by motor vehicle for compensation.
 
 
 17
 VI. That all of the property transported and the transportation referred to in the complaint was transportation in interstate commerce.
 
 
 18
 VII. That for a long time prior to the formation of Load Service, Incorporated, Poynor and Lamb Trucking was engaged in the business of transporting on the trucks of Poynor and Lamb exempt commodities in interstate commerce, by motor vehicles, for compensation, and William Reid Lamb was well acquainted with the demand for and customers who required and availed themselves of such transportation as shippers.
 
 
 19
 VIII. That the defendant, Utah Wholesale Grocery Company, always had truck loads of merchandise, consisting of several shipments, in the bay area, such as Oakland and San Francisco, California, for delivery by motor vehicle to points in Utah, Idaho, Washington, and Montana. In order to transport these shipments from the bay area to the Utah area on the trucks owned by Poynor and Lamb, referred to in exhibits 'A', 'B', and 'C', it was necessary to obtain a load of exempt commodities to transport for compensation, from the Utah Idaho territory to the bay area.
 
 
 20
 IX. That under the arrangement between the parties defendant in the performance of the transportation alleged in the complaint, the following plan was followed.
 
 
 21
 William Reid Lamb would solicit and locate a load of an exempt commodity (wheat) to be transported from Malta, Idaho, to South Vallejo, California. He notified Utah Wholesale Grocery Co. the date of the transportation. He dispatched a truck described in exhibit 'A', 'B', or 'C', selected and assigned the driver to drive the truck and generally advanced the two drivers $150 expense money. Also he furnished the drivers daily driver's logs and an envelope with the number of the tractor and trailer. The truck proceeded from Salt Lake City, Utah, to Malta, Idaho, where it was loaded with wheat for Hines & Co., a grain dealer. The wheat was delivered by the drivers at S. Vallejo, California, and thereafter, the drivers, if they had not been directed by William Reid Lamb, at Salt Lake City, where to go, would be advised by him where merchandise of the Utah Wholesale Grocery should be picked up and loaded in Oakland or San Francisco. The drivers would proceed to the designated points and load the truck with canned goods and other merchandise, pick up the invoices and deliver it to the Utah Wholesale Grocery house designated as the delivery point. The drivers made driver's logs on the trip and showed thereon Utah Wholesale Grocery as the carrier, also the trip expense envelope showing the name of Utah Wholesale Grocery Co. was filled out showing the trip made, and road expense incurred, and receipts for expenses paid in cash during said trip. These were turned in to William Reid Lamb or Juanita Hurd, a joint employee bookkeeper for Load Service, Incorporated, and Poynor and Lamb Trucking. Load Service would prepare a freight bill and statement showing that Utah Wholesale Grocery transported for Hines & Co. a load of wheat from Malta, Idaho, to General Mills at So. Vallejo, California, and show the charges made for the transportation plus the transportation tax of 3% on the freight charges. The Hines & Co. issued a check payable to the Utah Wholesale Grocery Co. in the amount of the charges, and transmitted the check to Load Service, Incorporated. Receipt of the check and the amount was entered in the accounts of Load Service, and then the check was forwarded to Utah Wholesale Grocery Co., who endorsed it and deposited it in its bank account. Load Service, Inc., prepared an invoice showing the actual mileage of the loaded and unloaded truck on the complete trip from Salt Lake to Malta to Oakland to Salt Lake showing a charge of 21 cents per mile or other agreed mileage. This invoice showed the amount to be paid the drivers and who the drivers were on the trip. The Utah Wholesale Grocery issued checks to the drivers in the amount shown on the invoice, and deducted therefrom all withholding tax. The drivers were all paid on a trip basis. The drivers' checks were delivered to Load Service or William Reid Lamb and he delivered the checks to the drivers. The trip expense envelope, receipts of cash expenditures on the trip and the drivers' logs and drivers' qualification certificates were delivered by Load Service to the Utah Wholesale Grocery Co. At intervals a statement was delivered by Poynor and Lamb to the Wholesale Grocery Company covering several invoices with a description of the trip, the mileage for each trip, the rate per mile, and the Utah Wholesale issued a check for the amount due, and made payment of the expenses recorded on the trip expense envelope to either Poynor and Lamb or Load Service, Inc., depending on who made the expense advance to the drivers.
 
 
 22
 X. The representative trip under the arrangement disclosed the following information:
 
 
 23
 (1) Invoice to Utah Wholesale Grocery for trip 214.
 
 
 24
 Salt Lake to Malta 163 miles
Malta to Oakland 774 miles
Oakland to Salt Lake 745 miles
Salt Lake to Ogden and return 76 miles
 -----------------------
 1758 miles @ 21 cents--
 $369.18
Driver Perry 72.50
Driver Sweek 72.50
 
 
 25
 (2) Invoice from Load Service to Hines & Co. for #42120 wheat
 
 
 26
 for So. Vallejo.
 
 
 27
 $231.66
 Tax 6.94
 -------
 $238.60
 
 
 28
 Check received by Load Service and turned over to and deposited by Utah Wholesale Grocery Co.
 
 
 29
 (3) Trip expense envelope showing total road expense of $102.10.
 
 
 30
 (4) There was transported on trip 214, 1105 items of canned goods weighing 41,030 pounds from San Francisco, California, to delivery at Salt Lake City and Ogden, Utah. If there were split deliveries or more than one pickup, the total amount of mileage was charged and paid for by Utah Wholesale Grocery.
 
 
 31
 XI. All incidental or necessary help and needs such as dock loaders, warehouse help, icing of cargo were arranged for by Loading Service, Inc., or the drivers and reported to Load Service, Inc., which entered the services rendered in its account, and made a charge for such services and for arranging for the load of exempt commodities, which charges have not been paid. At least 1000 trips have been made under the arrangements described herein.
 
 
 32
 XII. All repairs on the trucks were made and paid for by Poynor and Lamb, and the trucks when not in use were kept at the garage of Poynor and Lamb and were delivered to their garage by the drivers at the end of the completed trip.
 
 
 33
 XIII. Public Liability and Property Damage insurance was carried by and paid for by Poynor and Lamb, and the name of Utah Wholesale Grocery Co. was endorsed on said policies as an additional insured.
 
 
 34
 XIV. Common carriers by motor vehicles authorized to perform such transportation have on file tariffs which publish a rate of $1.04 per cwt on 40,000 pound min. volume from San Francisco to Salt Lake City, and a rate on less truck load of $2.19 per cwt between said points, 10,000 min. 1.88 per cwt: 20,000 min. 1.57 per cwt.
 
 
 35
 That if A. B. Smith was called as a witness, he would testify that carriers authorized by the Interstate Commerce Commission operating between the points involved herein cannot and will not give the service required by Utah Wholesale at a cost that makes any such service available, and that at any cost common carrier service is not fast enough for his needs.
 
 
 36
 XV. That at all times since the filing of the complaint in this case and at the present time William Reid Lamb and Glen C. Poynor have and now own trucks for operations over the highway as owners in common or as individuals, and that Utah Wholesale Grocery Company did not own trucks by which it transports property in the territory involved herein.
 
 
 37
 Paragraph 'B'
 
 
 38
 That the defendant would offer in evidence as to present operations copy of instrument entitled 'Lease of Motor Vehicle Equipment' attached hereto and marked exhibit 'D', a copy of an instrument entitled 'Agreement' between Utah Wholesale Grocery Co. and Load Service, Inc., attached hereto and marked exhibit 'E', and copies of statements rendered between the parties marked exhibits 'F' and 'G'.
 
 
 39
 Paragraph 'C'
 
 
 40
 That the Public Liability and Property Damage insurance is carried in the name of and paid for by Utah Wholesale Grocery Co. with the owner of the trucks named as an insured.
 
 
 41
 Paragraph 'D'
 
 
 42
 That the services performed by William Reid Lamb set forth in Paragraph 9 of this Stipulation is now being performed by Load Service, Inc., and its employees.
 
 
 43
 Paragraph 'E'
 
 
 44
 That the invoices for mileage payable on the trucks are prepared and presented by Glen C. Poynor to the Utah Wholesale Grocery Co.
 
 
 45
 Paragraph 'F'
 
 
 46
 Glen C. Poynor and William Reid Lamb are not now operating in any joint enterprise but are engaged in business as individuals.
 
 
 47
 Paragraph 'G'
 
 
 48
 That the operation at the present time is being carried on as herein disclosed by the facts stipulated and the representative exhibits, herein.
 
 
 49
 Exhibit A.
 
 Lease Of Motor Vehicle Equipment
 
 50
 This Agreement made and entered into this 28th day of March, 1955 by and between William Reid Lamb and Glen Poynor of Salt Lake City, Utah hereinafter called the Lessors and the Utah Wholesale Grocery of Salt Lake City, Utah, hereinafter called the Lessee or Business Owner or Manager.
 
 
 51
 Witnesseth, That Whereas, Lessors are the owners of motor vehicle equipment suitable for the transportation of property, which equipment is more particularly described as follows:
 
 
 52
 (8 motor vehicles are described.)
 
 
 53
 Insured by Owen Bunker & Sons, in the amounts as required by law.
 
 
 54
 And Whereas The Lessee desires to engage in the transportation of their own merchandise over the highways of the States of Utah, Idaho, California, Nevada, Montana, Wyoming, Washington and Oregon.
 
 
 55
 And Whereas Lessors desire to lease the above described Motor Vehicle Equipment to Lessee, and Lessee desires to consummate such lease.
 
 
 56
 Now, Therefore, It Is Hereby Agreed between the parties hereto that for the consideration as stated in this lease, Lessors do hereby lease unto Lessee for a period of five years from the date first above written, the motor vehicle equipment above described only, Driver not included. The driver of each vehicle shall be exclusively the employee of the Lessee and carried on Lessees' payroll. Subject to the following conditions:
 
 
 57
 1. That during the existence of this lease the motor vehicle equipment above described shall be under the complete control of the Lessee.
 
 
 58
 2. That the Lessee shall pay all road tax due on account of the use of the above described equipment.
 
 
 59
 3. As consideration, Lessee agrees to pay Lessors for the use of said equipment as follows: Twenty-One Cents (.21) per running mile. For power unit and trailer.
 
 
 60
 Lessors agree to keep said equipment in safe operating condition at all times.
 
 
 61
 4. That either party hereto may cancel this lease upon 15 days written notice to the other party.
 
 
 62
 S) William Reid Lamb S) Glen C. Poynor Lessors Utah Wholesale Grocery By S) A.B. Smith.
 
 
 63
 Exhibit D.
 
 Lease Of Motor Vehicle Equipment
 
 64
 This Agreement made and entered into this 15th day of November, 1956, by and between Glen Poynor of Salt Lake City, Utah, hereinafter called the Lessor and Utah Wholesale Grocery of Salt Lake City, Utah hereinafter called the Lessee.
 
 
 65
 Witnesseth, that whereas, Lessor is the owner of motor vehicle equipment suitable for the transportation of property, which equipment is more particularly described as follows:
 
 
 66
 (14 motor vehicles are described.)
 
 
 67
 Whereas the Lessee desires to engage in the transportation of their own merchandise over the highways of the States of Idaho, Utah, Nevada, Washington, Oregon, California, Colorado, Montana, and Wyoming.
 
 
 68
 Whereas Lessor desires to lease the above described motor vehicle equipment to Lessee, and Lessee desires to consummate scuh lease.
 
 
 69
 Now, Therefore, It Is Hereby Agreed between the parties hereto that for the consideration as stated in this lease, Lessor does hereby lease unto Lessee for a period of five (5) years from the date first above written, the motor vehicle equipment above described only, drivers not included. The drivers of such vehicles shall be exclusively the employee of the Lessee and carried on Lessee's payroll. Subject to the following conditions:
 
 
 70
 1. Lessee shall hire all drivers required for the operation of said equipment and said drivers shall be deemed to be its employees and agents alone, subject at all times to the direction and control of said Lessee and no employer-employee, or principal and agent relationship shall exist between said drivers and Lessor. All Social Security, unemployment, and industrial compensation taxes and contributions payable by said drivers shall be deducted by Lessee from said drivers wages and all necessary acts required by law of an employer, shall be done by said Lessee in connection with its drivers.
 
 
 71
 2. It shall specifically be the duty of Lessee to require the drivers to keep drivers logs and to qualify as drivers under the Safety Regulations of the Interstate Commerce Commission and to fully comply with said regulations as they pertain to Private Carriers of Property.
 
 
 72
 3. That during the existence of this lease the motor vehicle equipment above described shall be under the complete control of the Lessee.
 
 
 73
 4. That the Lessee shall pay all road tax due and special fuel tax on account of the use of the above equipment.
 
 
 74
 5. It is understood and agreed that the Lessee has public liability and property damage insurance with the Southwest American Fire & Casualty Company which will cover the equipment described above and proper endorsement shall be attached to said policy or policies protecting the interests of said Lessor as its interests may appear.
 
 
 75
 6. As consideration, Lessee agrees to pay Lessor for the use of said equipment as follows:
 
 
 76
 Eighteen cents (18 cents) per running mile.
 
 
 77
 7. Lessor shall also maintain said equipment in a proper and safe condition and repair, including all tires and other accessories and parts.
 
 
 78
 8. Lessee shall not in any manner hypothecate, mortgage or otherwise encumber, or cause to be encumbered said equipment during the term of this lease.
 
 
 79
 9. Lessor shall have the right to make substitution of the tractor or semi-trailer described above, provided, however, that the substituted equipment shall be in all respects comparable in design and quality with the equipment described herein.
 
 
 80
 10. That either party hereto may cancel this lease upon 15 days written notice to the other party.
 
 
 81
 Witness the hands of the parties hereto this 15th day of November, 1956.
 
 
 82
 Glen Poynor (s) Glen C. Poynor, Lessor Utah Wholesale Grocery By (s) A. B. Smith, Sec.-Treas. Lessee.
 
 
 83
 Exhibit E.
 
 Agreement
 
 84
 This Agreement made and entered into at Salt Lake City, Utah, this 15th day of November, 1956, by and between Load Service, Inc., hereinafter called agent, and Utah Wholesale Grocery Company, hereinafter called principal.
 
 Witnesseth
 
 85
 Load Service, Inc. is engaged in the business of furnishing service to companies engaged in the transportation of their own merchandise or exempt merchandise on motor vehicles which they own or have under lease.
 
 
 86
 It Is, Therefore, Mutually Agreed As Follows:
 
 
 87
 1. The only merchandise which the principal shall transport will be merchandise which is owned by the principal or which is exempt from regulation under any law or any regulation of the Interstate Commerce Commission or any state.
 
 
 88
 2. That the only vehicles used in the transportation of merchandise are vehicles either owned by the principal or which the principal has under lease. The principal shall furnish and maintain said vehicles.
 
 
 89
 3. The agent shall provide drivers for said vehicles, prepare the payrolls for said drivers, and distribute checks to the drivers, which checks shall be the checks of the principal.
 
 
 90
 4. The agent shall see that proper logs are prepared and that all records pertaining to safety regulations are kept and proper evidence of same filed where required.
 
 
 91
 5. The principal shall carry all insurance for its protection against liability arising out of the use of the aforesaid equipment and shall hold the agent harmless from any liability from the use of same.
 
 
 92
 6. The agent agrees to prepare and file fuel tax reports and the other reports for the principal incident to the operation of motor vehicles on the public highway, the principal to apy all amounts due by reason of fuel or wheel tax.
 
 
 93
 7. The agent shall see that the aforesaid equipment is at the proper place for loading at the proper time and in case of exempt hauls shall use reasonable effort to obtain such hauls and see that they are picked up and delivered properly.
 
 
 94
 8. In consideration for the service to be performed by Load Service, Inc., as herein stated, principal agrees to pay to Load Service, Inc. a reasonable fee for said service, which fee shall be billed to the principal at the end of each week.
 
 
 95
 Executed in ----- originals. $19Utah Wholesale Grocery Co.
 
 
 96
 By (s) A. B. Smith Principal Load Service, Inc. By (s) Lee R. Hurd.
 
 
 
 [1]
 Hereinafter, Utah Wholesale
 
 
 [2]
 Hereinafter, Trucking Co
 
 
 [3]
 Hereinafter, Load Service
 
 
 [4]
 49 U.S.C.A. 301 et seq