B & C TRUCK LEASING, INC., a corpo-
ration, Carl F. Moyes, and Ogden Driv-
ers Service, Inc., a corporation, Appel-
lants,

v.

INTERSTATE COMMERCE COMMIS-
SION, Appellee.

No. 6317.

United States Court of Appeals
Tenth Circuit.

Sept. 26, 1960.

Glen E. Fuller, Salt Lake City, Utah, for appellants.

George W. Howard, Denver, Colo. (A. Henry Walter and A. J. Merrill, Washington, D. C., Interstate Commerce Commission, were with him on the brief), for appellee.

Before BRATTON, PICKETT, and LEWIS, Circuit Judges.

BRATTON, Circuit Judge.

The Interstate Commerce Commission instituted this action against Carl F. Moyes, B & C Truck Leasing, Inc., and Ogden Drivers Service, Inc. The substance of the cause of action pleaded was that the defendants Moyes and B & C Truck Leasing, Inc., were engaged in the business of transporting property by motor vehicle in interstate commerce, for compensation, over public highways, without having a certificate of convenience and necessity, a permit, or other authority issued by the Interstate Commerce Commission; and that the defendant, Ogden Drivers Service, Inc., was aiding and abetting in such transportation. An exhibit attached to the complaint disclosed the transportation of fifteen cargoes of property between August 16, 1957, and December 18, 1957; and it was pleaded that such transportation had continued to the time of the filing of the action and would be projected into the future unless enjoined. The separate answers consisted of denials. The cause was submitted to the court on stipulated facts. Injunctive relief was granted and the cause came here on appeal. For convenience, reference will be made to the parties as the Commission, Moyes, Truck Leasing, and Drivers Service, respectively.

Part II of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 301 et seq., regulates the business of interstate transportation of property by motor vehicle on the public highways for compensation. Section 303(a)(14) defines the term "common carrier" by motor vehicle; section 303(a)(15) defines the term "contract carrier" by motor vehicle; and section 303(a)(17) defines the term "private carrier" by motor vehicle. Except as otherwise provided in the Act, section 306(a)(1) requires a common carrier to have a certificate of convenience and necessity issued by the Commission; and except as otherwise provided in the Act, section 309(a)(1) requires a contract carrier to have a permit issued by the Commission. The Act does not require a private carrier to have any authority from the Commission to transport its own property. Section 322(b) vests in the district courts jurisdiction to enjoin a motor carrier from operating in interstate commerce without first obtaining a certificate of convenience and necessity, or a permit, as the case may be. And section 42 authorizes joining as a party in such an action any person interested in or affected by the business of a carrier engaged in the transportation of property without first obtaining such certificate or permit. The Act is highly remedial in nature; and in order to effectuate its purposes in the public interest, it is to be liberally construed. Its terms

are sufficiently broad and comprehensive in scope to bring within its reach all those who are in substance engaged in the business of transporting property by motor vehicle on the public highways for hire, no matter the method or procedure employed. And compliance with its regulatory exactions is not to be evaded through means of subtle arrangements or shades of forms if the substance and effect of the operation bring it within the purview of the Act. A. W. Stickle & Co. v. Interstate Commerce Commission, 10 Cir., 128 F.2d 155, certiorari denied 317 U.S. 650, 63 S.Ct. 46, 87 L.Ed. 523; Lamb v. Interstate Commerce Commission, 10 Cir., 259 F.2d 358; Vincze v. Interstate Commerce Commission, 9 Cir., 267 F.2d 577.

■ The essence of the primary argument urged for reversal of the judgment is that Truck Leasing is engaged exclusively in the business of leasing trucks for use by others and that Drivers Service is engaged solely in the business of furnishing drivers to drive trucks for others; that they are not engaged in transporting property in interstate commerce for hire either as common carriers or contract carriers; and that, therefore, they are not required to obtain a certificate of convenience and necessity or a permit issued by the Commission. One engaged exclusively in leasing trucks for use by others in the transportation of their own property on the highways or one engaged solely in furnishing drivers to drive trucks for others in the transportation of their own property on the highways, without more, is not required to obtain a certificate of convenience and necessity or a permit issued by the Commission. Georgia Truck System v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210. But if the leasing of trucks and the furnishing of drivers are intentionally linked together in a manner to constitute constituent elements in a concert of action which effectuates the transportation of property in interstate commerce for hire without either party to the arrangement having a certificate of convenience and necessity or a permit

issued by the Commission, the leasing of the trucks and the furnishing of the drivers as constituent elements of the forbidden transportation are within the reach of the Act. In other words, such activities in isolation each from the other are not within the purview of the Act; but when they are intentionally bound together as constituent parts of an operation which contravenes the Act, they come within its sanctions. Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518.

■ These facts among others were stipulated and found by the court. Truck Leasing is a corporation chartered in May, 1957. Moyes organized the corporation; he and his wife own all of its stock except three qualifying shares; he is its president and manager and directs its operations; and she is its secretary-treasurer. Drivers Service is a corporation chartered in June, 1957. Gerald Stranger organized the corporation, and he is its president and manager. Moyes and his wife do not own any stock in Drivers Service and Stranger does not own any in Truck Leasing. Glen Fuller and Harold Bennett own qualifying shares in Truck Leasing; each owns one-fifth of the stock in Drivers Service; both are directors of both corporations; Fuller is attorney for both; and Bennett, an accountant, handles the accounts and records of both. The two corporations maintain their offices in Ogden, Utah, but not at the same place. Moyes, Truck Leasing, and Drivers Service, either separately or in combination, do not hold a certificate of convenience and necessity or a permit issued by the Commission. At the time of the filing of the complaint herein, Truck Leasing owned four tractors and six trailers; Moyes owned two tractors and six trailers which were leased to Truck Leasing; and Truck Leasing leased all of such trucks to the public for hauling purposes. Truck Leasing maintains the tractors and trailers leased from Moyes, except for major overhauls and licensing. These are paid by Moyes. Drivers Service does not own any tractors or trailers.

It furnishes drivers of trucks and compensates them for their services. Sometimes trucks leased by Truck Leasing are not driven by employees of Drivers Service and sometimes employees of Drivers Service drive trucks not leased by Truck Leasing. But as an integral part of the operations of the two companies, Moyes and Stranger, sometimes together and sometimes separately, call on companies thought to be present or prospective shippers. The terms of the lease of equipment furnished by Truck Leasing and the nature of the services rendered by Drivers Service are explained, and business is solicited. On some occasions when Moyes solicits business alone, he explains the truck rental offered by Truck Leasing, and he also tells the shipper the service which can be obtained from Drivers Service. When a shipper has property for transportation and desires to avail itself of the equipment and services of the two companies, it communicates with them separately. An agreement in the form of a lease is negotiated between the shipper and Truck Leasing for the equipment, and a separate agreement is negotiated with Drivers Service for the services of a driver. After the transportation has been completed, Truck Leasing and Drivers Service render to the shipper separate statements of the amount due and separate checks are issued in payment. Every lease of equipment is tied to beginning and destination points of San Francisco, Los Angeles, Ogden, Salt Lake City, Denver, Portland, Phoenix, or Billings; and the vehicle is covered by the lease until arrival at the public truck terminal at one of such points, even though the entire shipment may have been unloaded at an intermediate point or points. In like manner, under the contract between the shipper and Drivers Service, the drivers' services are tied to such terminal points. On occasions, Truck Leasing leases trucks to Stranger; using such trucks, Stranger transports exempt commodities for hire or his own exempt commodities for sale; and on the return trip, property is transported for other consignees under contracts with Truck

Leasing and Drivers Service. The drivers load the trucks, sometimes with the assistance and under the direction of the shipper or its supplier. It is often the duty of the driver to send weight information to the shipper. The driver usually inspects all merchandise, makes exceptions on behalf of the shipper, reports to the shipper any exceptions taken, and at the point of destination reports to the shipper objections or complaints relating to the quality, quantity, or other matters concerning the merchandise. Drivers Service maintains books and records for lessees or owners of heavy road equipment for various state and federal agencies necessary to the operation of such equipment. It keeps drivers' logs of the equipment for and in the name of the lessee or owner of the equipment driven by its drivers and maintains the operational safety of the equipment in a manner required for Commission inspection. It also furnishes for and on behalf of the owner or lessee of equipment necessary public liability and cargo insurance, fuel, and other road expenses. And it pays road taxes, if any, necessary to the various trips; maintains records; and pays payroll taxes and social security taxes. It is manifest from this review of the facts that, while some trucks leased by Truck Leasing are not driven by drivers of Drivers Service, and while Drivers Service furnishes drivers for trucks not leased by Truck Leasing, the plan adopted and carried out by the two companies in the conduct of a substantial part of their business is the giving of complete carrier service to shippers. Through joint action of the two, property is transported in interstate commerce without either having a certificate of convenience and necessity or a permit issued by the Commission. Through their cooperative action, accomplished by linking together the leasing of equipment and the furnishing of drivers, they take charge of property; move it in interstate commerce; and deliver it to the specified consignee at the specified destination. The owner of the property does not take possession of the truck. He does not

drive it. And he does not take part in the movement of the property. He merely participates in effectuating the arrangements with Truck Leasing and Drivers Service, and then pays the charges made for the transportation. It is through the activities of Truck Leasing and Drivers Service linked and bound together for that purpose that the property is transported. The method of operation in which the two companies take linked-together parts constitutes transportation of property as contract carriers in violation of the Act. Lamb v. Interstate Commerce Commission, supra.

The parties discuss with emphasis Lamb v. Interstate Commerce Commission, supra, in which it was held that the plan of operation there under consideration constituted a violation of the Act and, therefore, should be enjoined. In that case, it was said that the lease arrangement had no substance and was merely a component part of an overall plan to frustrate the purposes of interstate commerce regulation through unpermitted evasion. Here, the stipulated facts and findings of fact are silent in respect to the activities of the companies being a sham or otherwise. But that difference between the two cases is not necessarily decisive in point of result. Even though every isolated act of each of these parties when considered separately and apart from other acts is bona fide and lawful, when the acts of all are linked together as integrated parts of procedure through which property is transported in interstate commerce by motor vehicle for compensation without an authorizing certificate of convenience and necessity or a permit, such acts themselves become unlawful. Swift & Co. v. United States, supra.

■■ The further complaint is that the judgment is not sufficiently specific in its terms and does not describe with reasonable detail the act or acts enjoined. The judgment contains two injunctive provisions. One enjoins the defendants from performing transportation subject to Part II of the Act "of property by motor vehicle in interstate commerce, over or upon the public highways, for the general public, for compensation, whether over regular or irregular routes, unless and until such time, if at all, as (a) there is in force with respect to the defendants, or any of them, a certificate of public convenience and necessity issued by the Interstate Commerce Commission of the United States or other lawful authority, authorizing such operations." And the other provision enjoins the defendants from performing transportation "unless and until such time, if at all, as (a) there is in force with respect to said defendants * * * a permit * * * authorizing them * * * to engage in such business." Rule of Civil Procedure 65(d), 28 U.S.C., requires that an order granting an injunction shall be specific in terms; and that it shall describe with reasonable detail, and not by reference to the complaint or other documents, the act or acts sought to be restrained. The purpose of the rule is to apprise the party enjoined of the course of conduct which is prohibited. The judgment does not meet the requirements of the rule. It does not mark with the required measure of precision or specification the type or method of transporting property in interstate commerce which the parties are enjoined from conducting. It leaves them open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and later finding themselves subject to punishment for contempt. A judgment granting injunctive relief in such general terms is too broad. New York, New Haven and Hartford Railroad Co. v. Interstate Commerce Commission, 200 U.S. 361, 404, 26 S.Ct. 272, 50 L.Ed. 515; Schine Chain Theatres, Inc., v. United States, 334 U.S. 110, 125, 68 S.Ct. 947, 92 L.Ed. 1245; Russell C. House Transfer & Storage Co. v. United States, 5 Cir., 189 F.2d 349; Beatty v. United States, 8 Cir., 191 F.2d 317; Schwegmann Brothers Giant Super Markets v. Hoffmann-La Roche, Inc., 5 Cir., 221 F. 2d 326, certiorari denied 350 U.S. 839,

76 S.Ct. 77, 100 L.Ed. 748; Brumby Metals, Inc. v. Bargen, 275 F.2d 46.

The judgment is vacated and the cause is remanded for the entry of an appropriate judgment specifying with reasonable detail the nature of the integrated or linked together activities of the defendants which are enjoined without there being in effect an authorizing certificate or permit issued by the Commission.

LEWIS, Circuit Judge (dissenting).

In presenting this case by brief and oral argument the Government urged the Court to consider the factual situation from the standpoint of the shipper and to determine whether or not an I.C.C. violation had occurred by an examination of the net result obtained by the shipper through utilization of the combined services of the appellants. My brothers have apparently considered the approach sound and, since it is clear that a shipper may, by contracting with both Truck Leasing and Drivers Service, obtain much the same service as is usually available only through an I.C.C. authorized contract carrier, the court concludes that the shipper's benefits must be stopped by injunctive relief against all those whose businesses make the result possible. I cannot agree for often a business result may be obtained lawfully by one means and yet prohibited by another. Such, indeed, is the basic difference between tax avoidance and tax evasion. And such, in my view, is the difference between the situations considered in the instant case and that presented and held to be unlawful in Lamb v. Interstate Commerce Commission, 10 Cir., 259 F. 2d 358.

In Lamb the suspect activities were pure sham, found by the trial court to be so and the judgment sustained by this court upon such a premise. But in the instant case the activities of appellants do not carry the taint of sham and, quite to the contrary, the I.C.C. readily admits that Truck Leasing and Drivers Service are each and both lawfully operating independent businesses not violative of the Interstate Commerce Act *until their separate services are rendered to a mutual customer*. In other words, it is admitted that Truck Leasing may lawfully lease its trucks, and does so to many customers, and Drivers Service may lawfully furnish manpower, and does so to many customers, and that the businesses are bona fide in all regards until a Drivers Service driver operates a truck owned by Truck Leasing. The majority opinion holds the operation to be then unlawful because the result, even though neither appellant may actually know of the result, benefits a shipper. I cannot agree that the Interstate Commerce Act should be so broadly construed.

The difficulty of the majority opinion seems highlighted by the recognition that the injunctive relief granted by the trial court cannot be sustained in the general terms contained and that appellants are entitled to know "with reasonable detail the nature of the integrated or linked together activities * * * which are enjoined * * *." I fail to see what activities an injunction can properly enjoin. Certainly the parties cannot be enjoined from having a mutual customer for that event may occur by pure chance. Nor can American businesses be enjoined from cooperating one with the other to obtain mutual advantage for themselves or for their customers.

I would reverse with directions to dismiss the action.