SCOTT

v.

INTERSTATE COMMERCE COMMISSION.

No. 4737.

United States Court of Appeals
Tenth Circuit.

May 26, 1954.

Charles C. Spann, Albuquerque, N. M. (Everett M. Grantham, Albuquerque, N. M., on the brief), for appellant.

George W. Howard, Washington, D. C. (Paul F. Larrazolo, U. S. Atty., for Dist. of New Mexico, Albuquerque, N. M., and James A. Murray, Attorney, Interstate Commerce Commission, Washington, D. C., on the brief), for appellee.

Before BRATTON, MURRAH, and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

With an exception not pertinent here, section 203(a) (14) of the Interstate Commerce Act, as amended, 49 Stat. 543, 544, 49 U.S.C.A. § 303(a) (14), in presently material part defines the term "common carrier by motor vehicle" to mean any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate commerce of property for compensation. Section 203(a) (15), 49 U.S.C.A. § 303 (a) (15), in presently pertinent part defines the term "contract carrier by motor vehicle" to mean any person which, under individual contracts or agreements, engages in the transportation, other than transportation referred to in paragraph (14), by motor vehicle of property in interstate commerce for compensation. And section 203(a) (17), 49 U.S.C.A. § 303(a) (17), in presently pertinent part defines the term "private carrier of property by motor vehicle" to mean any person not included in the term common carrier by motor vehicle or the term contract carrier by motor vehicle, who or which transports in interstate commerce by motor vehicle property of which such person is the owner, when such transportation is for the purpose of sale, or in furtherance of any commercial enterprise. With exceptions not having any present pertinence, section 206(a) (1) of the Act, 49 U.S.C.A. § 306(a) (1), forbids a common carrier by motor vehicle subject to the provisions of the chapter to engage in any interstate operation on any public highway unless there shall be in force with respect to such carrier a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such operation. With exceptions not material here, section 209(a) (1), 49 U.S.C.A. § 309(a) (1) forbids a contract carrier by motor vehicle to engage in such business on any public highway unless there is in force with respect to such carrier a permit issued by the Commission authorizing it to engage in such business. And

section 222(b) of the Act, 49 U.S.C.A. § 322(b), provides in presently pertinent part that if any motor carrier operates in violation of any provision of the chapter, the Commission may apply to the district court of the United States for any district in which such carrier operates for the enforcement of such provision; and that such court shall have jurisdiction to enforce obedience thereto by writ of injunction.

The Interstate Commerce Commission instituted this action against C. R. Scott, doing business under the trade name Scott Oil Company. It was pleaded in the complaint, as amended, that the defendant was engaged in the business of transporting petroleum products in interstate commerce by motor vehicle on the public highways between points in New Mexico and points in Arizona; that such transportation was for the general public for compensation; that the defendant was a common carrier or a contract carrier of property by motor vehicle; and that there was not in force in respect to the defendant a certificate of convenience and necessity or other authority issued by the Commission authorizing such transportation and operations. An exhibit attached to the complaint and made a part of it purported to show that between February 4, and March 1, 1952, the defendant transported from a point in New Mexico to points in Arizona eighteen different cargoes of gasoline and other petroleum products all consigned to Shell Oil Company, for which transportation was charged and collected in an aggregate amount in excess of $4,800. The prayer was that the defendant be enjoined from continuing to transport property in interstate commerce by motor vehicle on public highways unless and until there should be in force with respect thereto a certificate of convenience and necessity or other appropriate authority issued by the Interstate Commerce Commission. By answer, the defendant denied that he was a common carrier or a contract carrier. And he pleaded affirmatively that he was a wholesaler of petroleum products; that

any transportation of any of such products was merely incidental to the buying and selling of such products as part of the business as a wholesaler; and that therefore he was a private carrier, not required to obtain a certificate of convenience and necessity or other authority from the Commission. After a full hearing on the merits, the court determined that the defendant was a contract carrier; and judgment was entered enjoining him from further engaging in such transportation unless and until there was in force in respect thereto a certificate of convenience and necessity, a permit, or other appropriate authority, issued by the Commission. The defendant appealed. For convenience, subsequent reference will be made to the parties as the Commission and Scott, respectively.

The question presented for determination is one of classification under the Act, supra. It is whether Scott falls within the class of a contract carrier, within the meaning of section 203(a) (15), or that of a private carrier, within the meaning of section 203(a) (17). Where there are controverted issues of material fact in a case of this kind, the burden rests upon the Commission to show by a preponderance of the evidence that the character of the business of the carrier is such as to bring him within the class of a common carrier or a contract carrier. Taylor v. Interstate Commerce Commission, 9 Cir., 209 F.2d 353, certiorari denied, 74 S.Ct. 677; Interstate Commerce Commission v. Tank Car Oil Corp., D.C., 60 F.Supp. 133, affirmed, 5 Cir., 151 F.2d 834. But in this case the material facts are without dispute or controversy. And therefore the question of classification becomes one of law. Brooks Transport Co. v. United States, D.C., 93 F.Supp. 517, affirmed 340 U.S. 925, 71 S.Ct. 501, 95 L.Ed. 668.

The uncontroverted evidence adduced upon the trial tended to show these facts. Scott resides in Albuquerque, New Mexico. At one time he owned and operated an oil business in Albuquerque, and in connection therewith his facilities in-

cluded a bulk plant and tanks for the storage of petroleum products. Several years before the institution of this action, he sold that business, and since that time it has been operated under different management and ownership. Sometime after the sale of such business, Scott obtained in due course a certificate of convenience and necessity authorizing him to engage in the transportation in intrastate commerce of bulk petroleum products in certain counties in New Mexico. Later, he sought and obtained authority in due form of law to operate as a common carrier of petroleum and petroleum products in trucks from points and places in New Mexico to other points and places in that state. And during the times involved here, he did transport such products in tank trucks between points of origin and points of destination within New Mexico. Scott was the successful bidder to sell and deliver to the Holloman Airbase in New Mexico, between December 1, 1951, and May, 1952, 625,000 gallons of fuel oil; and he performed the contract on his part by purchasing the product from a refinery in New Mexico, transporting it by tank trucks to the airbase, and there delivering it. Scott entered into a written contract with Shell Oil Company, a distributor of gasoline and other petroleum products, in which he agreed to sell to such company at delivered prices large quantities of first structure gasoline, second structure gasoline, diesel fuel, and stove oil. The contract specified base delivered prices at twelve points in Arizona and two in New Mexico. The delivered prices included federal and state taxes, and the prices were to vary from time to time with the prices fixed by the Platt Oilgram Chart. By its terms, the contract provided that payment for all products delivered during each calendar month should be made on or before the fifteenth of the succeeding month. And it further provided that it should be in effect from February 1, 1952, to January 31, 1954, unless terminated in the meantime, and should continue after January 31, 1954, unless terminated by one of the parties giving to the other at least thirty days' notice. A few days after the contract between Scott and Shell Oil Company became effective, Scott entered into a contract with New Mexico Asphalt and Refinery Company in which he agreed to purchase from the refinery company, f. o. b. the loading racks of its refinery in Artesia, New Mexico, large quantities of first structure gasoline, second structure gasoline, diesel oil, and stove oil. The contract provided that the prices to be paid for such products should be the usual and customary prices as established and quoted by Platt's Oilgram Service. It further provided that all products purchased during any calendar month should be paid for on or before the fifteenth of the following month, and that if payment was made within ten days after purchase a discount of one per cent should be allowed. And it further provided that it should be in force and effect until March 31, 1954, unless terminated sooner in the manner therein specified. Acting pursuant to these contractual arrangements, Scott obtains gasoline and other petroleum products from the refinery company at its refinery in New Mexico, transports such products by tank trucks operated on the highways to points in Arizona and there delivers them to Shell Oil Company. In each instance, there is a specific order from the Shell Oil Company for the products before they are loaded. The order is sent to Scott prior to the obtaining of the load. After receipt of an order from Shell Oil Company, an order to the refinery is prepared in the offices of Scott at Artesia. This order is sent with the truck to the refinery and the truck is loaded accordingly. After being loaded, the tank is sealed with a refinery seal. The refinery prepares an invoice of the load and charges it to Scott. The destination in Arizona of each load is known to the refinery company. Scott then prepares his invoice to Shell Oil Company. Taxes are paid on the refinery invoice. Delivery of the products is made from the trucks directly to the storage tanks or station tanks of Shell Oil Company. The prod-

ucts are purchased at the refinery at the public posted prices, f. o. b. the refinery; and they are delivered at the fixed delivered prices. Scott has eight or nine other customers, some in Arizona and some in Colorado, for whom he purchases and to whom he sells petroleum products; and the accounts of such customers are handled substantially in the same general manner as that of the Shell Oil Company. Scott maintains at Artesia an office where his records are kept and a garage for the storage, repair, and maintenance of his trucks. The office and garage are in the same building. He owns and operates approximately 18 trucks and trailer tanks for the transportation of gasoline and other petroleum products, and such trucks have a combined carrying capacity in excess of 135,000 gallons. He employs approximately 40 to 50 persons. About 35 of such persons are truck drivers, 6 are machinists or repair men in the garage, 1 is a loader who drives the trucks from the garage to the refinery and checks the load, 2 are dispatchers, and 2 are office helpers. He does not maintain any fixed storage tanks and does not own or use in any manner bulk storage tanks. He does not store or own any petroleum products except as they are delivered into his trucks at the refinery. He does not purchase gasoline or other petroleum products except for immediate transportation and delivery to customers; and he sells nothing that he does not deliver directly. His delivered charge is the cost of the products at the refinery plus an additional charge which is comparable to but less than the cost of transportation by a common carrier. He bears the loss from the failure of the products to meet quality requirements, loss from shortages, loss from spoilage, and loss from the failure of the customer to accept delivery. But he does not perform any service from which he could gain a profit except the service of transportation. When these uncontroverted facts and circumstances are considered in their entirety, we share with the trial court the view that the primary business of Scott is the transportation in interstate commerce of gasoline and other petroleum products under individual contracts or agreements for compensation and that other phases or features of his business are incidental and secondary to that of such transportation.

In challenging the judgment, Scott places emphasis upon the point that he purchases the gasoline and other products from the refinery company in Artesia; that title to such products thereupon vests in him; that it remains in him until the products are delivered to Shell Oil Company or other purchasers from him; and that therefore he transports his own property. It is argued in support of the point that Scott bears all loss of gasoline or other products by way of leakage or otherwise occurring before delivery is made to his customers. But Scott's legal ownership of the products at the time of their transportation is not necessarily controlling in determining whether he acts as a contract carrier or a private carrier. His acquisition of the legal title to the products at the time they are received from the refinery and his parting with such title at the time of the delivery of the products does not necessarily as a rule of thumb entitle him to be classified as a private carrier. Interstate Commerce Commission v. Tank Car Oil Corp., 5 Cir., 151 F.2d 834.

Scott's primary business being that of transporting by motor vehicle in interstate commerce gasoline and other petroleum products under individual contracts or agreements for compensation, he falls within the class of a contract carrier, even though title to such products is vested in him at the time of their transportation. A. W. Stickle & Co. v. Interstate Commerce Commission, 10 Cir., 128 F.2d 155, certiorari denied 317 U.S. 650, 63 S.Ct. 46, 87 L.Ed. 523.

The judgment is affirmed.