EKLUND BROTHERS TRANSPORT, INC.,
Ben-L Trucking, Inc., Northern Tank Line,
and Maas Transport, Inc., Complainants,

v.

Gordon RITTS, d. b. a. Ritts Water Service,
O. C. Berg, d. b. a. Berg's Water Service,
and Elliot E. Jensen, d. b. a. El's Trucking
Service, Respondents,

The Public Service Commission of the State
of North Dakota, Appellant.

No. 8339.

Supreme Court of North Dakota.

Nov. 21, 1966.

In June 1963 Eklund Brothers Transport, Inc., Ben-L Trucking, Inc., Northern Tank Line, and Maas Transport, Inc., as complainants, asked that Gordon Ritts, d.b.a. Ritts Water Service, O. C. Berg, d.b.a. Berg's Water Service, and Elliot E. Jensen, d.b.a. El's Trucking, be required by the Public Service Commission to show cause why they should not be permanently enjoined from providing certain transportation service under the guise of proprietary carriage.

In answer to the complaint each of the respondents asserted that he was engaged in the sale of water, that the transportation of the water was merely incidental to the sale thereof, and that he was thereby not in violation of any of the laws of the State or of any of the regulations of the Commission.

Upon hearing, the Commission concluded that each of the respondents was primarily engaged in for-hire transportation of water in tank vehicles, and that whenever any of the respondents was an owner of the water transported, the title was acquired simply as an incident to the transportation of the water and the respondents were not bona fide owners of the water, as contemplated by § 49–18–02(1), N.D.C.C. Accordingly, on October 24, 1963, the Commission ordered the respondents to cease and desist operations as for-hire motor carriers within the State of North Dakota until they had complied with the applicable provisions of Chapter 49–18 and the rules and regulations of the Commission.

Norton M. Hatlie, Commerce Counsel, Bismarck, for appellant.

Wheeler & Daner, Bismarck, for complainants.

Walter O. Burk, Williston, for Elliot E. Jensen, d. b. a. El's Trucking.

ERICKSTAD, Judge.

This is an appeal by the North Dakota Public Service Commission from a district court judgment which reversed and rescinded that part of an order of the Commission which required Gordon Ritts and O. C. Berg to cease and desist operations as for-hire motor carriers within the State of North Dakota until they had complied with applicable provisions of Chapter 49–18, N.D.C.C., and the rules and regulations of the Commission.

When petitions for rehearing filed by Gordon Ritts and O. C. Berg were denied by the Commission, they appealed to the District Court of Burleigh County. It is from the judgment of the district court which reversed part of the Commission order that this appeal is taken.

The question we have to decide is whether the respondents are for-hire carriers, as defined by § 49–18–01, and thus subject to

the provisions of Chapter 49–18, or whether they are private carriers transporting their own property and thus exempt from the provisions of Chapter 49–18, pursuant to § 49–18–02(1).

If they are for-hire carriers, they would be required, among other things, to secure from the Commission a certificate of public convenience and necessity if they are common motor carriers or a permit to operate if they are contract motor carriers before operating within the State. This they have not done.

Subsection 1 of § 49–18–02, N.D.C.C., reads as follows:

The provisions of this chapter shall not apply:

1. To any person transporting his own property with his own vehicle when such person is the bona fide owner of the property so transported; * * *.

It is important to note that this statute does not merely require that a person be the owner of the property which he transports in his own vehicle, but that it requires that he be the "bona fide" owner.

As Mr. Jensen did not appeal from the Commission order and thus the judgment of the district court did not affect him, we shall consider only the facts surrounding the activities of Mr. Berg and Mr. Ritts. The pertinent facts are not in dispute.

Mr. Berg, a resident of Lignite, North Dakota, stated that he was primarily engaged in the business of hauling water, but that he also had a grocery store at Lignite. He used seven trucks in his water-hauling business, three of which were tandem-axle trucks and four of which were single-axle trucks. The capacity of the tanks on these trucks varied from 55 barrels of water to 85 barrels of water. He owned no terminal and did very little maintenance work on his trucks. He generally employed two people, and during the busy periods, five or six additional part-time employees. The water which he hauled was generally transported in an area within 20 or 30 miles of Lignite. He purchased the water at approximately 2 cents a barrel, or, as he stated it, $1.00 for a single-axle truck and $1.50 for a tandem-axle truck. He was billed monthly by the City of Lignite for the water that he bought. He principally hauled the water to oil well drilling sites. He charged for the service $7.50 per hour for single-axle transportation and $10.00 per hour for tandem-axle transportation. He made no additional charge for the water itself; the cost of the water was included in the price. He stated that he had to make $7.50 an hour to operate his trucks, and thus, that if it took an hour to make the trip, he figured it out so that he could get $7.50 per load, and that if he could make two loads in an hour, he would charge half that amount per truck.

He hauled water to drilling sites in the Black Slough Field, the Lignite Field, the Rival Field, and, as he stated, practically all the fields in Burke County. He also hauled water to the wells south of Noonan in Divide County and to some drilling sites in Renville County. When he did not buy the water from the City of Lignite, he purchased it from farmers and generally paid $50 per location. The water, when delivered to a drilling site, was put into a holding tank maintained by the operator.

He had no sales tax permit from the State of North Dakota, nor did he charge sales tax on the water sold. He had no driver safety training program and was not inspected by any governmental agency to determine whether his equipment was safe. He had no authority from the Public Service Commission to operate as a common motor carrier. His gross revenue from the water-hauling operation for the calendar year 1962 was approximately $53,000.

Mr. Ritts, a resident of Westhope, North Dakota, had since 1957 been in the busi-

ness of hauling water, mainly in Bottineau County and occasionally in Renville County. He owned an F600 1960 Ford tank truck, an F600 1961 stock truck, a 1700 1963 International truck, a 500 1963 Dodge truck, and a 1700 1962 International truck.

All except one of the trucks were equipped with water tanks of a 65-barrel capacity. The remaining truck was equipped so that it could be used for either stock or grain hauling. He employed three people as drivers in his water-hauling business. He had a 28-by-36-foot shop in Richburg Township, which he used exclusively for maintaining the motor vehicles mentioned. He had one additional truck which he used in the State of Montana.

Ninety-eight per cent of the water which he hauled he purchased from farmers; the other two per cent he purchased from the municipalities of Sherwood and Lignite. Some of the water purchased was taken from sloughs and some from stock ponds, and some he obtained from holes which he dug. He generally paid from $30 to $50 for the water required by a drilling contractor for each oil well drilled, regardless of the quantity used.

He charged $7.50 an hour per truck for hauling water to the drilling rigs or contractors.

In determining a contract price for supplying water to an oil drilling site, he normally charged the sum of $500 plus $50 per day additional for each day over nine days of hauling. It took about ten minutes to unload the tanks at the drilling site, either into an earth pit or into a storage tank. His gross income for the year 1962 approximated $50,000. He had no motor carrier operating authority from the Public Service Commission. He had no sales tax permit from the State of North Dakota and no driver training program. His equipment was inspected by no governmental agency other than occasionally by highway patrolmen. His employees were hired by the month, and some of them worked 24 hours straight on occasion.

The testimony described herein refers to the business of hauling fresh water. There was additional testimony in the record concerning the hauling of salt water, but as the district court judgment reversed the Commission's order only as it related to the hauling of fresh water, it is not necessary for us to discuss this feature of the case. The parties all apparently agree that the transportation of the salt water, which was not owned by the truckers, was properly enjoined.

Do these facts show that Mr. Berg and Mr. Ritts were bona fide owners of the water transported, so as to make them exempt, under Subsection 1 of § 49–18–02, from the other provisions of Chapter 49–18? We think not.

Unless Mr. Ritts and Mr. Berg come within the provisions of Subsection 1 of § 49–18–02, the provisions of § 49–18–07 apply. That section reads as follows:

> 49–18–07.  Carriers must operate in accordance with law and rules.—It shall be unlawful for any common motor carrier, contract motor carrier, or agricultural carrier to transport persons or property for hire unless:
>
> 1.  He shall have obtained the certificate or permit required by this chapter; and
>
> 2.  He shall comply with the provisions of this chapter and with any applicable rules, regulations, or restrictions adopted by the commission.

North Dakota Century Code.

Had the Legislature intended to exempt from the provisions of Chapter 49–18 motor carriers who purchased property principally for the purpose of being paid for transporting it, it would have needed only to require that the carrier be the owner, not the bona fide owner, of the property so trans-

ported. That being the case, we must give some meaning to the words "bona fide."

The public policy to be affected through Chapter 49–18 is contained in § 49–18–06 of the Code. It reads as follows:

§ 49–18–06. Public policy affecting motor transportation.—All common motor carriers, contract motor carriers, and agricultural motor carriers are hereby declared to be affected with a public interest and to be subject to regulation as prescribed by this chapter and other applicable provisions of law. Among the purposes to be served are:

1. To relieve the existing and future undue burdens upon the highways arising by reason of the use of such highways by motor vehicles for hire;

2. To protect the safety and welfare of the traveling and shipping public in their use of the highways; and

3. Carefully to preserve, foster, and regulate transportation and to permit co-ordination of transportation facilities, and to enforce the provisions of this chapter.

North Dakota Century Code.

The purposes described therein would be completely thwarted if all motor carriers otherwise subject to the provisions of Chapter 49–18 could be exempt therefrom by merely purchasing the commodities intended for transport. Such a construction of the statute would encourage all motor carriers now subject to Chapter 49–18 to adopt a similar practice of purchasing all commodities just prior to their transportation so that they might avoid its provisions.

We have no North Dakota decisions construing Subsection 1 of § 49–18–02. We believe, however, that a 1954 decision of the United States Court of Appeals, in construing a somewhat comparable provision of the federal law relating to the regulation of motor carrier transportation in interstate commerce, deals with facts quite similar to the facts of this case and therefore merits our serious consideration.

In describing the provision in federal law which exempted motor carriers who transported in interstate commerce property owned by the transporter, the court said:

* * * And section 203(a) (17), 49 U.S.C.A. § 303(a) (17), in presently pertinent part defines the term "private carrier of property by motor vehicle" to mean any person not included in the term common carrier by motor vehicle or the term contract carrier by motor vehicle, who or which transports in interstate commerce by motor vehicle property of which such person is the owner, when such transportation is for the purpose of sale, or in furtherance of any commercial enterprise. * * *

Scott v. Interstate Commerce Commission, 213 F.2d 300, 301 (10th Cir. 1954).

In holding that Scott, the transporter, fell within the class of a contract carrier and therefore was not exempt from the provisions of the federal law, which required that a contract carrier secure a permit from the Interstate Commerce Commission to operate in interstate commerce, the court said:

In challenging the judgment, Scott places emphasis upon the point that he purchases the gasoline and other products from the refinery company in Artesia; that title to such products thereupon vests in him; that it remains in him until the products are delivered to Shell Oil Company or other purchasers from him; and that therefore he transports his own property. It is argued in support of the point that Scott bears all loss of gasoline or other products by way of leakage or otherwise occurring before delivery is made to his customers. But Scott's legal ownership of the products at the time of

their transportation is not necessarily controlling in determining whether he acts as a contract carrier or a private carrier. His acquisition of the legal title to the products at the time they are received from the refinery and his parting with such title at the time of the delivery of the products does not necessarily as a rule of thumb entitle him to be classified as a private carrier. [Citation omitted.]

Scott's primary business being that of transporting by motor vehicle in interstate commerce gasoline and other petroleum products under individual contracts or agreements for compensation, he falls within the class of a contract carrier, even though title to such products is vested in him at the time of their transportation. [Citation omitted.]

Scott v. Interstate Commerce Commission, supra, 304.

We believe it is especially significant that the federal statute does not require that the transporter be a bona fide owner, but that nevertheless the court in *Scott* held that the mere ownership of the products, when purchased for transportation, did not make the carrier exempt. The court emphasized that Scott did not purchase the gasoline or other petroleum products except for immediate transportation and delivery to customers, and that he sold nothing that he did not deliver directly. It also emphasized that Scott did not perform any service from which he could gain a profit except the service of transportation. It accordingly found that Scott's primary business was the transportation in interstate commerce of gasoline and other petroleum products under individual contracts or agreements for compensation, and that other phases or features of his business were incidental and secondary to the transportation.

■ As in *Scott,* the carriers in this case did not purchase the water except for immediate transportation and delivery to their customers. They sold nothing that they

did not deliver directly. They did not perform any service from which they could gain a profit except the service of transportation. Accordingly, their primary business was that of transporting the water.

In construing the federal Motor Carrier Act, the United States District Court, after pointing out that in determining the true nature of transportation in any particular case it is necessary to have in mind the purposes of the act, said:

> * * * In addition the court should have in mind the fact that this legislation is remedial and should be liberally interpreted to effect its evident purpose and that exemptions from the operation of the Act should be limited to effect the remedy intended. * * *

Interstate Commerce Commission v. A. W. Stickle & Co., 41 F.Supp. 268, 271 (E.D.Okla.1941).

■ We believe that in construing our motor carrier act, contained in Chapter 49–18, we must likewise have in mind that this legislation is remedial and should be liberally interpreted to effect its evident purpose, and that exemptions from the operation of the act should be limited to effect the remedy intended.

On an appeal from the decision of the district court, which held that A. W. Stickle & Company was a carrier subject to the provisions of the Motor Carrier Act, the circuit court of appeals, in affirming the district court decision, said:

> * * * A carrier may not avoid the requirements of Part II [of the Interstate Commerce Act] by subterfuge or device, or by posing as a private carrier when in substance and reality, he is engaged under individual contracts in transportation by motor vehicle of property in interstate commerce for compensation. Ownership of the commodity transported is not the sole test. The primary test in §§ 203(a) (14) and 203(a) (15) [of the Interstate Commerce Act, as amended, 49 U.S.C.A.

§ 303(a)] is transportation for compensation.

A. W. Stickle Co. v. Interstate Commerce Commission, 128 F.2d 155, 160 (10th Cir. 1942), certiorari denied 317 U.S. 650, 63 S.Ct. 46, 87 L.Ed. 523.

In discussing the significance of the fact that title to the lumber which was transported remained in the shipper's name until it was delivered, the court said:

> We think it unimportant that the technical title to the lumber remains in Stickle & Company until the transportation is completed and the lumber delivered to the customer. Prior to the transportation of the lumber and normally before the lumber has been purchased by Stickle & Company, it has entered into a contract to sell the lumber to a customer and to transport it to his yard. The lumber is transported and delivered by Stickle & Company in fulfillment of that contract to sell and Stickle & Company receives both pay for the lumber and compensation for its transportation from the customer.

> The transportation is not merely incidental to the business of selling lumber. It is a major enterprise in and of itself. The major portion of Stickle & Company's capital investment is in that enterprise, and the major portion of its payroll goes to employees engaged in that enterprise. The amount which Stickle & Company receives from a customer for the lumber and the transportation thereof, in excess of the amount it pays the mill for the lumber, approximates the charge that would be made under established rates for the transportation of the lumber by a carrier who has complied with Part II [of the Interstate Commerce Act] and has a certificate of convenience and necessity.

> We conclude that, in substance and reality, Stickle & Company is engaged primarily in the transportation of lumber in interstate commerce by motor vehicle

for compensation under individual contracts or agreements with its customers, and that it is a contract carrier by motor vehicle within the meaning of § 203(a) (15) [Interstate Commerce Act, as amended, 49 U.S.C.A. § 303(a)].

A. W. Stickle Co. v. Interstate Commerce Commission, supra, 128 F.2d 160–161.

Following the guide lines laid down in *Scott* and *Stickle,* we conclude that the motor carriers in this case are subject to the general provisions of Chapter 49–18 and thus do not come within the exemption provided for in Subsection 1 of § 49–18–02, N.D.C.C., even though the title to the water was vested in them at the time of its transportation.

The judgment of the trial court is reversed, and the order of the Commission is affirmed.

TEIGEN, C. J., and STRUTZ, KNUDSON, and MURRAY, JJ., concur.