1998-NMCA-045

956 P.2d 845

**PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, Plaintiff–in–Intervention–Appellee,**

v.

**Esther MARTINEZ and Juanita Martinez, Defendants–in–Intervention–Appellants.**

No. 18287.

Court of Appeals of New Mexico.

Feb. 11, 1998.

J.E. Casados, Robert L. Hlady, Gallagher, Casados & Mann, P.C., Albuquerque, for Appellee.

Tim Chelpaty, Alamogordo, Nancy Cronin, Paul S. Cronin, Duhigg, Cronin, Spring & Berlin, P.A., Albuquerque, for Appellants.

## OPINION

APODACA, Judge.

1. Defendants-in-Intervention (Defendants), as parties injured in a motor vehicle accident, appeal the trial court's grant of summary judgment in favor of Plaintiff–in–Intervention (Insurer). Defendants challenge the summary judgment on three grounds: (1) the trial court failed to apply the primary business test; (2) the tortfeasor (Insured) operated as a carrier "for hire," requiring a policy with increased insurance coverage; and (3) Insurer knew or should

have known it was required to issue such a policy. We hold that the trial court properly applied the primary business test and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Insured owned and operated Alvarez Sand & Gravel in the town of Anthony. He had a mining lease from the Bureau of Land Management for land in the town of La Union. Insured took orders for sand or dirt that he dug from the leased land and delivered with his dump truck to various buyers. He charged customers according to the product delivered and the distance he traveled to make the delivery.

3. Insured made arrangements with an insurance agent to purchase insurance for his dump truck. His insurance application described his business as "Deliver Sand & Gravel to Site." Insured relied on the insurance agent to provide the necessary policy. The insurance agent inspected Insured's truck and issued Insurer's business auto insurance policy to Insured for $25,000 per person and $50,000 per accident.

4. Later, Insured rear ended Defendants' vehicle with his dump truck. This collision resulted in the paralysis of Esther Martinez. The Martinezes sued Insured for personal injuries. Insurer intervened with a complaint for declaratory judgment regarding the amount of indemnity available under its policy.

5. In the trial court, Defendants argued that Insured was a carrier for hire under the Motor Carrier Act, NMSA 1978, §§ 65–2–80 to –127 (1981, as amended through 1993). This classification would subject Insured to minimum insurance limits of $100,000 per person and $300,000 per accident under Rule 232.03(a) of the State Corporation Commission Motor Transportation Rules. Insurer contended that Insured used his dump truck incidentally to the sale of his products. Both parties moved for summary judgment, and the trial court granted Insured's motion.

## II. DISCUSSION

### A. Standard Of Review

■ 6. Summary judgment is applicable where a litigant can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1–056(C) NMRA 1998; *see Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970. On appeal, we evaluate the pleadings and evidence from a perspective supporting the parties' right to a trial on the merits. *See Rummel*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970. Where, as here, the material facts are not disputed, we consider whether the trial court correctly applied the law to the undisputed facts. *See id.* ¶ 16.

### B. The Primary Business Test

■ 7. Defendants argue that the trial court failed to apply the primary business test in determining that Insured was not a carrier for hire. This test is used to determine whether a carrier is subject to the authority of the State Corporation Commission under the Motor Carrier Act, NMSA 1978, Sections 65–2–80 to –127. *See McWood Corp. v. State Corp. Comm'n*, 78 N.M. 319, 320–21, 431 P.2d 52, 53–54 (1967).

■ 8. The primary business test applies where the carrier has title to the transported goods. *Lloyd McKee Motors, Inc. v. New Mexico State Corp. Comm'n*, 93 N.M. 539, 542, 602 P.2d 1026, 1029 (1979). The parties here do not dispute that Insured held title to the goods he transported. Under the primary business test,

> "[a] carriage is 'for hire' if the primary business of the carrier is transportation of the goods, but ... the carriage is private if its primary business is the sale of its own goods which the owner transports in furtherance of that business and the transportation is merely incidental thereto."

*Id.* (quoting *McWood Corp.*, 78 N.M. at 321, 431 P.2d at 54).

■ 9. Defendants contend that several factors evidence the trial court's improper application of the primary business test. Defendants cite to the trial court's failure to issue findings of fact and Insurer's reliance on title to support its argument. Summary judgment, however, does not require the trial

court to make specific findings. *Design Prof'ls Ins. Cos. v. Saint Paul Fire & Marine Ins. Co.*, 1997–NMCA–049, ¶ 9, 123 N.M. 398, 940 P.2d 1193.

10. The record does not indicate that the trial court relied solely on title and thus failed to apply the primary business test. Insurer alerted the trial court to the primary business test in its motion for summary judgment. Defendants argued the primary business test in their memorandum responding to Insurer's motion. Insurer's response to Defendants' cross-motion for summary judgment also directed the trial court's attention to the primary business test. This pleading attached a copy of a court decision defining the test. The parties extensively relied on the primary business test during the summary judgment proceeding. Additionally, the trial court's letter opinion stated, "I have reviewed the memos and exhibits and considered argument of counsel." Consequently, we reasonably infer that the trial court applied the primary business test in rendering its decision. *See id.*

### C. Carrier For Hire

■ 11. Defendants next assert that Insured was a carrier for hire under the primary business test. *See Lloyd McKee Motors, Inc.*, 93 N.M. at 542, 602 P.2d at 1029. Defendants' reliance on the analysis in *Red Ball Motor Freight, Inc. v. Shannon*, 377 U.S. 311, 318–19, 84 S.Ct. 1260, 1264–65, 12 L.Ed.2d 341 (1964) is misplaced. There, the United States Supreme Court applied the primary business test in the context of buy-and-sell arrangements used to circumvent the law. *Id.* at 318, 84 S.Ct. at 1264. The elements that the Court focused on were specific to buy-and-sell arrangements, which did not occur in this appeal. *Id.* at 319, 84 S.Ct. at 1265. Additionally, Defendants did not assert that Insured used this type of device to evade the law.

12. Defendants also rely on factors pronounced in case law decided before New Mexico's adoption of the primary business test. *See Rountree v. State Corp. Comm'n*, 40 N.M. 152, 154–55, 56 P.2d 1121, 1122–23 (1936); *Collins–Dietz–Morris Co. v. State Corp. Comm'n*, 154 Okla. 121, 7 P.2d 123,

129–30 (1931). These cases considered how the carrier determined its fees and charged its customers in deciding whether a carrier was for hire. *See Rountree*, 40 N.M. at 154–55, 56 P.2d at 1122–23; *Collins–Dietz–Morris Co.*, 7 P.2d at 129–30. Adoption of the primary business test modified the analysis of whether a carrier was for hire. Presently, courts principally rely on the evaluation of the carrier's fees only when the carrier does *not* hold title to the goods. *See Lloyd McKee Motors, Inc.*, 93 N.M. at 542, 602 P.2d at 1029. The primary business test, on the other hand, considers additional factors in classifying a carrier for hire. *See id.* In *McWood Corp.*, the court evaluated several facts in determining the nature of a carrier's primary business: (1) the carrier's purchase of the transported goods, (2) the carrier's knowledge of a market for the goods prior to purchase, and (3) the difference between the purchase price and the sale price as related to the tariff prices of certified carriers. 78 N.M. at 322, 431 P.2d at 55. We weigh the relevant facts to determine whether Insured's main business was transportation of goods or the sale of his own goods. *See Lloyd McKee Motors, Inc.*, 93 N.M. at 542, 602 P.2d at 1029. Insured held a mining lease on the land where he extracted sand and dirt. He sifted the sand and loaded the materials into his dump truck with a borrowed front-end loader. Insured never bought materials from other sources or transported materials for other suppliers. He received orders for sand and dirt over the telephone. Insured determined his charges according to the type of material and on distance of delivery.

13. Considering these circumstances, we affirm the trial court's decision that Insured was not for hire. Insured's property interests and labor in the materials, business assets, and fee structure indicated that transportation was incidental to the sale of his own goods. *See McWood Corp.*, 78 N.M. at 322, 431 P.2d at 55.

■ 14. These factors distinguish this case from *Scott v. Interstate Commerce Comm'n*, 213 F.2d 300 (10th Cir.1954). In *Scott*, the Tenth Circuit determined that Scott's primary business was transportation.

*Id.* at 304. Scott transported petroleum products that he did not produce. *Id.* at 303–04. He did not maintain storage tanks and only purchased petroleum products for immediate delivery to customers. *Id.* The carrier charged the cost of the products plus an additional charge less than that of a common carrier. The carrier in *Scott* did not have the property interests, labor, and assets invested in production as Insured did here.

### D. Insurer's Knowledge Of Required Policy

15. Defendants argue that Insurer knew or should have known that Insured required a policy with limits of $100,000 per person and $300,000 per accident. *See* §§ 65–2–80 to –127. Defendants concede, however, that if we determine that Insured was not a carrier for hire, we need not reach this issue. In view of our holding above, we agree.

### III. CONCLUSION

16. We conclude that the trial court properly applied the primary business test and determined that Insured was not a carrier for hire. We will not consider Defendants' contention concerning Insurer's knowledge because they failed to obtain the trial court's ruling on that issue.

17. **IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.