## COLLINS-DIETZ-MORRIS CO. v. STATE CORPORATION COMMISSION.

No. 21439. Opinion Filed June 2, 1931.

Withdrawn, Corrected, Refiled, and Rehearing Denied Jan. 12, 1932.

Keaton, Wells, Johnston & Barnes and Tomerlin & Chandler, for plaintiff.

E. S. Ratliff, Robert H. Ledbetter, J. Berry King, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and Geo. J. Fagin, Special Asst. Atty. Gen., for defendant.

ANDREWS, J. This cause is in this court on an agreed case and is submitted by the parties hereto for judgment and decision of this court pursuant to the authority of section 846, C. O. S. 1921. By their pleadings the parties have submitted themselves to the jurisdiction of this court, and this court, by consent, has taken jurisdiction of the subject-matter of the action. The parties will be referred to as plaintiff and defendant. The facts as agreed upon are as follows:

"1. The plaintiff, Collins-Dietz-Morris Company, is a private corporation organized and existing under the laws of the state of Oklahoma with its principal office and place of business in Oklahoma City in said state; and is engaged solely in the business of conducting a wholesale grocery business, with its principal distributing house located in Oklahoma City.

"That it sells its products and delivers same to retail merchants over the state, handling all wholesale merchandise ordinarily sold by such grocery concerns; that it owns and operates about two trucks out of Oklahoma City upon the public highways of the state, and has paid the annual highway license fee of approximately $112 on the two trucks, including those used in the transactions hereinafter described, and has obtained number plates and fully complied

with the requirements of the law as contained in Compiled Oklahoma Statutes of 1921, sections 1029-1034, as amended Session Laws 1925, chapter 167, and Session Laws 1927, chapter 116, providing for the licensing of vehicles upon the public highways.

"That it is the established practice of plaintiff company to contract privately and to sell and transport its said merchandise pursuant to private contract with its customers and to transport and make delivery of its own products and merchandise in its own trucks to the purchaser, operated upon the public highways of the state outside of incorporated cities and towns.

"That the defendant, Corporation Commission, now seeks to hold plaintiff company as a class 'C' carrier subject to payment of permit fees and a mileage tax and subject to other regulations required of class 'C' carriers under the provisions of the legislative act known as the 'Motor Vehicle Act Enforcement Fund' herein described.

"2. That the defendant is the Corporation Commission of the state of Oklahoma, having the powers and duties as defined by the Constitution and laws of said state; said Commission being composed of C. C. Childers, chairman and Commissioner, E. R. Hughes, Commissioner, and Fred Capshaw, Commissioner.

"3. That the 1929 Legislature of Oklahoma enacted said law known as House Bill No. 19, which was duly approved by the Governor on January (June) sic 28, 1929, and is chapter 253 of Session Laws of 1929. Reference is hereby made to said act and the Laws of 1923, therein described, and said laws are incorporated herein and made a part hereof the same as if fully set forth herein. A copy of House Bill No. 19 is hereby attached, marked exhibit 'A' and made a part hereof.

"4. That pursuant to said act, the Corporation Commission on October 14, 1929, promulgated Order No. 4831, being rules and regulations governing motor carriers, including class 'C' carriers, which became, or purported to become, effective on November 8, 1929. A copy of said rules and regulations is hereby attached, marked exhibit 'B' and made a part hereof.

"5. That plaintiff company, in making sales of its products and deliveries outside of cities and towns, employs two forms of transactions, both being private contracts and herein designated as follows:

"Class X Transaction — without direct charge to customers for transportation;

"Class Y Transaction—with direct charge to customers for cost of transportation.

"6. Description of Class X transaction: In this class of transaction, a private contract is made by plaintiff company for the sale and delivery of its products, which delivery is effected by use of its own vehicles operated by its own employees upon the public highways. No charge or collection is made or presented to the purchaser and no specific compensation is paid to plaintiff company for transportation, but it is hereby agreed between the parties hereto that the actual expense and cost of operation of such motor vehicle used in making said delivery, such as the cost of gasoline, wages of the driver, depreciation in value of the motor vehicle, etc., is included in the general overhead expense of plaintiff company and such expense is reflected in and augments to some extent the delivered price of said merchandise so sold and delivered.

"7. Description of Class Y Transaction: In this class of trade or transaction, it is the practice of plaintiff company to contract privately and to sell and make delivery of its own merchandise in its own vehicles, operated by its own employees, to customers located in other cities, and to sell at a stipulated price and to charge them either on the invoice or by separate charge, an additional and particular amount declared as a charge for delivery, all being agreed and done in completion and consummation of such sale.

"8. That the plaintiff herein, though engaging in both classes of transactions hereinabove described, does not engage in the delivery business or transportation business for hire, but as a convenience and advantage incidental to its wholesale business, and does not in any wise hold itself out as a public carrier and does not contract for or engage in a public service.

"9. That heretofore, and since the passage and approval of said act, and since November 8, 1929, the date when said rules and regulations of the Commission (Order 4831) became effective, the plaintiff company has carried on and performed its business of selling and delivering merchandise at wholesale, as aforesaid, of which the following two certain 'Specific Transactions' claimed to be in violation of said House Bill No. 19 (Session Laws 1929, ch. 253) and in violation of the orders of the Commission as contained in said Order 4831, are typical, said transactions being described as follows:

"Specific Transaction Class 'X'.

"That plaintiff company located at Oklahoma City, Okla., on or about the 20th day of March, 1930, sold to A. T. O. House, a customer of plaintiff, located at Norman, Okla., a certain lot of merchandise consisting of manufactured products, and as a part of the consideration for said sale, plaintiff company agreed to transport said merchandise from plaintiff's place of business in Oklahoma City, Okla., to the place of business of said customer in Norman, Okla., a distance of 18 miles; that plaintiff company was the owner of said goods while in transit, and continued to have the ownership thereof until delivery at destination; that plaintiff company completed said sale and trans-

ported said merchandise to said customer in a motor vehicle owned by the plaintiff company and operated by plaintiff company over the public highways between said cities and outside of any incorporated city or town, and that the regular highway license fee on such motor vehicle was duly paid as provided by the laws of Oklahoma, and the state license tag was displayed thereon.

"That in this 'Class X Transaction,' the plaintiff company did not make any direct charge against said purchaser for the transportation of said property, but sold said property at a delivered price for said merchandise, which delivered price was paid by the purchaser. That in computation of the total sale and delivery price on said merchandise, plaintiff company took into account the expense of making the delivery and of transporting said merchandise from Oklahoma City to its said customer at Norman, Okla.; that is to say, that in fixing the total price to the customer, plaintiff took into account its general overhead cost of doing business, including the expense of upkeep, depreciation of vehicles, cost of gasoline, driver, and other items involved in the expense of delivery, such items being charged into the general overhead expense of the plaintiff company, and thereby reflected in some degree in the purchase price of said merchandise. That plaintiff company did not engage in the transportation or carriage of said merchandise for hire.

### "Specific Transaction Class 'Y'.

"That plaintiff company, located at Oklahoma City, Okla., on or about the 19th day of March, 1930, sold to W. R. Swinney, a retail customer of the plaintiff company at Moore, Okla., a certain lot of merchandise consisting of manufactured products, and as a part of the consideration for said sale, agreed to transport said merchandise from plaintiff's place of business in Oklahoma City to the place of business of said customer at Moore, Okla., but it was agreed and understood that, for such expense of transportation, the customer should pay an additional item or sum, and he did pay such additional charge, to wit, 15c per cwt. That the plaintiff company was the owner of said goods while in transit and continued to be the owner thereof until delivery at destination. That plaintiff company completed said sale and transported said merchandise to said customer in a motor vehicle owned by the plaintiff company and operated by the plaintiff company over the public highways between said cities, a distance of about ten miles, and that the license tax on the truck used in said transaction had been duly paid by plaintiff company and a state license tag was displayed thereon, all as provided by law. That the plaintiff company did not engage in said transportation for hire, but as a convenience and advantage incidental to its wholesale business.

"10. That at the times of the transaction referred to in paragraph 9 above, to wit, 'Specific Transaction Class "X" and 'Specific Transaction Class "Y,"' plaintiff had not made application for a permit and has not since received or applied for, or obtained a certificate or permit as required by said act, House Bill No. 19, Session Laws 1929, chapter 253, and particularly had not, and has not since, made the report required by section 9, paragraph 7 of said act, nor had it complied with the provisions of section 10 of said act; that plaintiff did not, and has not at any time since, paid the tax of one-half cent per mile on mileage covered in making said delivery, as provided and required by section 9 of said act, and has not obtained the certificate or permit as required by rules 10 and 11 contained in Order 4831, and has failed and refused to make the monthly reports to said Commission in respect to mileage, the same being the requirements of said act and order 4831 in respect to Class 'C' carriers.

"11. That the defendant, Corporation Commission, has taken proceedings for the enforcement of the said act as against the plaintiff as class 'C' carrier, and has commenced proceedings to compel the plaintiff to comply therewith, it threatening to enforce the provisions of said act and the penalties provided in section 13 of said act, and has directed the arrest of plaintiff's drivers engaged in making delivery on the public highways in carrying on the transactions herein described, by this plaintiff, and said Commission seeks to compel the plaintiff to obtain and pay for a permit and certificate as a class 'C' carrier, and to compel and force the plaintiff to comply with said paragraph 9 hereof, and seeks to compel the payment of a tax of one-half cent per mile as provided in the act, and seeks full enforcement thereof as against the plaintiff company; that the further enforcement of said act and rules will result in the interruption and partial cessation of plaintiff's business and will result in material loss and damage thereto."

The contentions of the plaintiff are as follows:

### "Contentions of Plaintiff Company.

"(1) That the act and the orders of the Commission respecting class 'C' carriers do not extend to or apply to the plaintiff company in respect to the class 'X' transaction herein described, and as to all such transactions the plaintiff company is not a class 'C' carrier.

"(2) That the act and orders of the Commission respecting class 'C' carriers do not extend to or apply to the plaintiff company in respect to the class 'Y' transaction herein described, and as to all such transactions the plaintiff company is not a class 'C' carrier.

"If both contentions of plaintiffs as above stated are sustained, the issue is concluded; but if either of said contentions is denied

by the court, then plaintiff company further contends as follows:

"(3) Said act and the rules of the Corporation Commission herein designated, as applied to the Specific Transaction Class X, are invalid and unconstitutional as an attempt to deny to the plaintiff company the ordinary, equal, and proper use of the highway while engaged in a private enterprise in the delivery of its own products carried in its own vehicles along the public highways, and said act and rules violate the Fourteenth Amendment of the Constitution of the United States and seek to appropriate the property of the plaintiff to the public use without just compensation, and deprive the plaintiff of its property without due process of law, and seeks to deny the plaintiff the equal protection of the laws.

"(4) That said act and the rules of the Corporation Commission herein described, as applied to the Specific Transaction Class Y are invalid and unconstitutional on the same grounds as last above stated.

"(5) That said act and rules of the Commission herein described, as applied to Specific Transaction Class X are invalid and unconstitutional in that they deny the plaintiff company the right to contract, and deprive it of the liberty of contract, in violation of the Fourteenth Amendment to the Constitution of the United States.

"(6) That said act and the rules of the Commission herein described as applied to the Specific Transaction Class Y are invalid and unconstitutional on the same grounds as last above stated.

"(7) That said act and the orders of the Commission herein described violate section 7 of art. 2 of the Constitution of Oklahoma, which provides that no person shall be deprived of life, liberty, or property without due process of law and the enjoyment of the gains of their own industry, and invades the field of private rights as expressly reserved to the people as expressed in section 33, art. 2, of the Constitution of Oklahoma.

"(8) That said act and the orders of the Commission herein described violates section 24, art. 2, of the Constitution of Oklahoma, which provides that no private property shall be taken for public use without just compensation.

"(9) That said act and the orders of the Commission herein described violate section 50, art. 5, of the Constitution of Oklahoma, which provides the Legislature shall pass no law exempting any property from taxation in that said act purports to exempt from its application the transportation of live stock, farm products in the raw state, and trucks hauling road materials.

"(10) That said act and the orders of the Commission herein described violate section 5, art. 10, of the Constitution of Oklahoma, which provides that taxes shall be uniform on the same class of subjects, in that said act seeks to exempt from its application transportation of live stock and farm products in the raw state, and said act does not provide an equal and uniform basis of taxation against vehicles of the same general class and usage traveling upon the public highways.

"(11) That said act and the orders of the Commission herein described violate section 32, art. 2, and section 51, art. 5, of the Constitution of Oklahoma, which prohibit monopolies and the granting of exclusive privileges or immunities.

"Wherefore, plaintiff prays that the several separate contentions herein presented shall be sustained and that the Corporation Commission of the state of Oklahoma shall be prohibited by proper writ of prohibition issued out of this court, from enforcing said act as against this plaintiff company, or in taking any further proceedings to enforce the collection of a mileage tax upon the plaintiff company under the provisions of said law pertaining to class 'C' carriers."

The contentions of the defendant are as follows:

"Contentions of Defendant Corporation Commission.

"(1) Defendants Corporation Commission and C. C. Childers, chairman, E. R. Hughes and Fred Capshaw, members thereof, and each of them deny each and every allegation and contention made by plaintiff herein, and specifically deny:

"(a) That the act complained of and the orders of the Commission made pursuant thereto, are not applicable and extend to or apply to plaintiff in each of the classes of transactions set forth and contained in plaintiff's contention.

"(b) Defendants deny that the act or orders of the Commission respecting class 'C' carriers are not entirely applicable to the plaintiff company and others similarly situated in either of the specific transactions set forth and described in plaintiff's contention.

"(c) Defendants deny that the rules of the Corporation Commission, as applied to plaintiff, are in any wise invalid or unconstitutional, and deny that the enforcement of the rules of the Commission or of the statute complained of will in any wise deny plaintiff the ordinary equal and proper use of the highway, or that said act and the enforcement thereof, together with the enforcement of the rules of the Commission would in any wise violate the Fourteenth Amendment to the Constitution of the United States, or would in any wise appropriate the property of plaintiff to public use without due compensation, or that such enforcement would deprive the plaintiff of its property without due process of law or deny it the equal protection of the law.

"(d) Defendants deny that said act and rules of the Commission in any wise results in a denial to the plaintiff of the right to contract or deprive it of the liberty of contract in violation of the Fourteenth Amendment to the Constitution of the United States.

"(e) Defendants deny that said act or the orders of the Commission and the enforcement of either or both, would in any wise violate section 7 of art. 2 of the Constitution of Oklahoma, providing that no person shall be deprived of life, liberty, or property without due process of law and the enjoyment of the gains of their own industry, or that such enforcement would invade the field of private rights as is reserved to the people and expressed in section 33 of art. 2 of the Constitution of Oklahoma.

"(f) Defendants deny that said act or the orders of the Commission and the enforcement thereof, would in any wise violate section 24 of art. 2 of the Constitution, providing that no private property shall be taken for public use without just compensation.

"(g) Defendants deny that the act or the orders of the Commission and the enforcement thereof would violate in any wise section 50 of art. 5 of the Constitution, providing that the Legislature shall pass no law exempting any property from taxation.

"(h) Defendants deny that said act or the orders of the Commission and the enforcement thereof against plaintiff would in any wise violate section 5 of article 10 of the Constitution, providing for the uniformity of taxation and denies that either the act or the order of the Commission in any wise enforces an unequal or burdensome basis of taxation against vehicles of the same general class and usage traveling upon the public highways.

"(i) Defendants deny that said act or the order of the Commission and the enforcement thereof in any wise violates section 32 of art. 2 or section 51 of art. 5, prohibiting monopolies or the granting of exclusive privileges or immunities.

"(2) That said act and rules of the Commission found and contained in Order No. 4831 relating to class 'C' carriers apply to the transactions herein described not only generally, but as typified and described as specific transaction class 'X' and specific transaction class 'Y', and that the plaintiff company, by virtue of the law and facts herein stated, is a class 'C' carrier within the terms of the statute and the rulings contained in said Order No. 4831.

"(3) That said act is a valid and constitutional act and presents the proper exercise of the police power of the state in respect to the regulation not only in the interest of public safety in said use, but in the regulation of the use and conservation of the public highways of the state, and constitutes a proper exercise of the power of the state necessary to the maintenance, improvements and conservation of the public highway.

"(4) That the orders of the Commission in relation to class 'C' carriers have been duly and legally made pursuant to the act, and that said order or orders are fully authorized, reasonable, germane and valid."

The controlling statute is chapter 113, Session Laws of 1923, as amended by chapter 253, Session Laws of 1929.

There are thus presented two major questions: First, whether a delivery of goods belonging to a corporation by a truck belonging to the corporation over the public highways of the state of Oklahoma without a direct charge to the customer for transportation of the goods, the cost of the transportation being added to the overhead cost of the business, comes within the provisions of the act; and second, whether a delivery of goods belonging to a corporation by a truck belonging to the corporation over the public highways of the state of Oklahoma without a direct charge to the customer for transportation of the goods, the cost of the transportation being added to the price of the particular goods being delivered, comes within the provisions of the act.

In the first instance the cost of the delivery service, having been charged to the general overhead expenses of the business, can no more be considered as a charge against the purchaser of goods than the cost of any other expense of operating the business. Had the intention of the Legislature been to include such a transaction, there would have been no reason for the use of the language used in the act. The act was intended to apply only to those who transport for "compensation," and was not intended to embrace that class of transportation where goods are sold for a fixed price or conveyed merely as an incident to the sale, and where the price of the goods is not dependent upon whether or not they are delivered.

The defendant contends that there is no difference between the two transactions other than a mere matter of bookkeeping, and that since the plaintiff operates for profit, the sale price of the goods is compensation for the transportation. The defendant says: "It does not matter that in one type of its transactions all the expenses of transportation and delivery are first charged to 'overhead' and is later 'reflected' in the delivery price' paid by the purchaser. The purchaser

pays for the transporting and delivering an amount which compensates for all the expenses therefor under either type." We cannot follow that reasoning. In the class under discussion now, the cost of the goods is the same whether they are delivered or whether they are not delivered. The cost of delivery is added to the overhead expenses and distributed over all the goods sold whether they are delivered or not. A portion of the overhead cost charged to the delivery is paid from the sale of goods that are not delivered or delivered within the limits of the city where the act is not operative.

The defendant contends that it makes no difference whether the cost of delivery is charged to the overhead and thereafter collected from the sale of the merchandise, or whether the charge is made direct to the purchaser. We do not agree with that contention. If the cost of delivery is charged to overhead and reflected in the price of the merchandise, it is reflected in that price whether the goods are delivered or not and whether they are delivered within a city or transported over the public highways, and it cannot be said that the plaintiff receives compensation for the delivery of the goods. It is not a question of bookkeeping as stated by the defendant, but a question of whether the goods are transported for compensation. If the purchaser pays the same price for goods at the wholesale house that he pays for goods after they have been delivered to him over the public highways, it cannot be said that the plaintiff receives anything as compensation for their delivery.

The transportation in the class under consideration cannot be said to be for "compensation" and is only for convenience and the natural advantage incident to the delivery of goods sold. In our opinion, the act was not intended to cover that class of transportation.

While it is the duty of this court to sustain the validity of a legislative act, it is not the duty of this court to extend the plain provisions of a legislative act beyond the terms thereof. There is nothing in this act from which it can be said that the act was intended to apply to all users of the public highway. It does not apply to one who drives a truck upon the public highway for the transportation of himself on a pleasure trip, and it does not apply to one who drives a truck upon a public highway for the transportation of his property other than for compensation. The act is not a general act applying to all users of the public highway, and we must construe the act as enacted.

The distinction between users of the public highway, as reflected by the terms of the act, is between those who use the public highway as a means for securing compensation for the use thereof and those who use the public highway without compensation for the use thereof. There is nothing in the act from which it can be said that a merchant who transports his merchandise over a public highway and delivers it at the end of the trip for the same price for which he sells and delivers it at a place of business without the use of the public highway, is subject to the provisions of the act.

We therefore hold that, under the facts stated and the law applicable thereto, transportation described as "Specific Transaction Class 'X'" is not within the provisions of the legislative enactment herein considered, and the judgment thereon should be and is for the plaintiff.

The second question presented is more difficult and involves a number of minor questions. There the price of the goods delivered includes a direct charge for the delivery thereof. The cost of the delivery not only is reflected in the price of the goods delivered, but the price of goods delivered is greater than the price of goods sold by the same wholesale house that are not delivered. That the title to the goods remains in the vendor until delivered is immaterial. Since the seller receives compensation for the delivery of the merchandise, we must conclude that the legislative intent, as shown by the terms of the act, was that this delivery be included in the provisions of the act.

It is contended that the act is unconstitutional as an attempt to deny plaintiff the ordinary and equal use of the highways while engaged in private enterprise; that it violates the Fourteenth Amendment to the Constitution of the United States in that it appropriates property of the plaintiff to public use without just compensation; that it deprives the plaintiff of its property without due process of law, and that it denies the plaintiff the equal protection of the law.

The authority for regulation of traffic over the public highways is well recognized. It is unquestionably a part of the police power of the state. Chicago, R. I. & P. Ry. Co. v. Taylor, 79 Okla. 142, 192 P. 349. The state spends money for the construction of public highways. That money is derived largely from taxes. The state has the right to say what use shall be made of those highways and to prescribe reasonable restrictions on and conditions for their use. Where leg-

islation imposes reasonable restrictions and conditions, it will not be disturbed by this court. The language of this court in Ex parte Tindall, 102 Okla. 192, 229 P. 125, is applicable herein. See, also, Ex parte Sales, 108 Okla. 29, 233 P. 186, Barbour v. Walker, 126 Okla. 227, 259 P. 552, and Kane v. New Jersey, 242 U. S. 160, 61 L. Ed. 222. We cannot say that the imposition of a tax upon those who use the public highways for transportation of merchandise for "compensation" is an unreasonable condition imposed on such use. While the plaintiff is neither a public service company nor a transportation company within the meaning of section 18, article 9, of the Constitution, and while it is not subject to regulation as such, its right to the use of the public highways of the state is subject to reasonable regulation, and, by the provisions of the act, that regulatory power is placed in the Corporation Commission. In so far as the act is intended to operate as a regulation or restriction upon or a condition to the use of the highways, and those regulations, restrictions, and conditions are reasonable, it is not inoperative and void. We will look to the terms of the act to determine the reasonableness thereof.

While this court assumed jurisdiction in this matter on account of the public importance of the question presented and under the authority of section 846, C. O. S. 1921, it declines to determine whether or not the legislative act in question is constitutional as to persons who are not shown by the agreed case to be affected thereby, and the provisions of the legislative act which do not affect the plaintiff in this action will be construed no further than is necessary to determine the rights of the plaintiff in this action.

The act in question, by its terms, affects three classes of motor carriers, therein designated as class "A", class "B" and class "C" motor carriers. The language of the act is such as to show a legislative intent of severability with reference to the three classes. The provisions of the act with reference to each of the three classes are severable. A determination of the constitutionality of the act with reference to one of the classes does not require a determination of the constitutionality of the act with reference to the other classes or affect the validity of the act as to the other classes, and the act may be sustained as to one class although unconstitutional as to the other classes. Class "C", alone, is involved herein.

The inclusion in the act of a provision that, if any section or part thereof, sentence, clause or phrase of the act, for any reason is held to be unconstitutional, such holding shall not affect the validity of the remaining portions of the act, does not render the act, as a whole, void for uncertainty if the provisions of the act as to any one class are not void for uncertainty. As to class "C" motor carriers the act is not uncertain in its provisions.

The provision in the act that the provisions of the act shall not apply to transportation of live stock and farm products in the raw state and trucks hauling road material, is a provision referring to class "C" motor carriers as defined therein. It has no reference to class "A" or class "B" motor carriers as defined therein. That provision applies only to carriers operated by the owners thereof for the transportation of their own property, goods, or merchandise, and does not apply to carriers or the owners thereof as to the transportation of live stock, farm products in the raw state and trucks hauling road material, where the live stock, farm products or road material are not the property of the owner of the carrier. That provision does not constitute such an exemption from taxation as is prohibited by section 50, article 5 of the Constitution of Oklahoma, or such an inequality as is prohibited by section 5, article 10 of the Constitution of Oklahoma. It is a reasonable provision and the distinction shown thereby is justified by the nature of the property to be transported and by the character of the transportation covered by the provisions of the act. The act, by its terms, applies to motor carriers "doing an inter-city business" and it does not apply unless the transportation is "inter-city." The congestion of inter-city roads is sufficient reason for the classification. The transportation of live stock and farm products by the owners thereof in carriers owned by them is not generally on an "inter-city" basis, and the transportation of road material, as used in the act, is not generally on an "inter-city" basis. "Road material," as used in the act, refers to materials intended to be used for the construction, maintenance and repair of public highways, and the language used does not apply to materials that could be used for the construction, maintenance or repair of public highways but which, in fact, are intended to be used for other purposes. The proviso applies to all class "C" motor carriers and, therefore, there is no distinction between class "C" motor carriers by reason of the proviso. The distinction •between

class "C" motor carriers and those persons engaged in the transportation of the property described in the proviso is reasonable and is sustained.

The act makes a clear distinction between common carriers and private carriers and a separate scheme of regulation is provided for each. The standard of conduct for each is clearly prescribed and the provisions thereof as to each are defined. The provisions with reference to class "C" motor carriers are reasonable and are sustained.

There is a distinction made between private carriers who transport their own property for compensation and those persons who transport their own property without compensation, but that distinction is based upon the power of the state to limit the use of the public highways for the transaction of business. The distinction is reasonable and is sustained.

An examination of the act discloses that class "C" motor carriers as defined therein are not common carriers and are not subject to the regulation of the Corporation Commission as to rates, fares, charges and classifications. The schedules, services and accounts of class "C" motor carriers are not subject to regulation or supervision by the Corporation Commission, the authority of the Corporation Commission over class "C" motor carriers being limited to the regulation of the use of the public highways by class "C" motor carriers under the restrictions contained in the act.

We, therefore, find that the act in question is valid and constitutional as to class "C" motor carriers, as defined therein, and that under the facts stated in the agreed case and the law applicable thereto, the transportation described in the agreed case as "Specific Transaction Class 'Y'" is within the provisions of the act and that as to that class and transaction the judgment should be and it is for the defendant herein.

The plaintiff should pay the costs of this proceeding.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., concurs in conclusion. KORNEGAY, J., concurs as to the constitutionality of the act and dissents as to the application. RILEY, J., dissents.