**DOLESE BROS. CO., a Co-Partnership Consisting of Roger M. Dolese and the Dolese Company, a Delaware Corporation, Appellant,**

v.

**Rex PRIVETT, Hamp Baker, and Jan Eric Cartwright, All Commissioners of the Oklahoma Corporation Commission, State of Oklahoma, Appellees.**

No. 52208.

Supreme Court of Oklahoma.

Jan. 20, 1981.

Bay, Hamilton, Lees, Spears & Verity by Geo. L. Verity and G. L. Jidge Verity, Oklahoma City, for appellant.

Charles D. Dudley, Interstate Rate Counsel, Oklahoma Corp. Commission, Oklahoma City, for appellee.

IRWIN, Chief Justice:

On hearing the application and complaint filed by the Director of the Motor Division

of the Oklahoma Corporation Commission (Commission) against appellant (Dolese), the Commission found that Dolese was a "common carrier" under our Motor Carrier Act (47 O.S.1971, § 161 et seq.) while engaged in hauling crushed rock to its customers and making a separate charge for such hauling. The Commission also found that Dolese was subject to its regulatory authority when engaged in such commercial enterprise and ordered it to cease and desist its operations as a "common carrier". Dolese appealed.

The issue presented is whether Dolese is a "common carrier" or a "private carrier" while hauling the crushed stone and making a separate charge for such hauling. Dolese argues that when the history [1] of our Motor Carrier Act is considered in connection with the present enactment and the many other ordinary businesses [2] that would be subject to the regulatory authority of the Commission if Dolese's crushed rock operations are, it is evident that the legislature did not intend, and did not by statute, confer upon the Commission regulatory authority over Dolese's crushed rock operations or other similar operations.

The Commission based its determination that Dolese was a common carrier upon the following findings:

(1) Dolese mines and crushes rock at nine separate quarries and it hauls rock from six of such quarries both to itself and to its customers;

(2) Dolese maintains and operates 58 dump trucks for the purpose of hauling rock from those quarries and 15% of its total revenue is derived from its hauling, while 3.43% of its total profit is derived from such operations;

(3) Dolese makes a separate transportation charge for rock delivered to its customers and such charges generally conform to the tariffs approved by the Commission for certificated carriers; and

(4) Dolese is engaged in the business of hauling property in intrastate commerce for compensation and its transportation of the crushed rock is not incidental to or in the furtherance of any of its commercial enterprises.

Dolese argues that the finding in paragraph (4) is erroneous because its hauling of crushed rock in its own trucks is incidental to and in furtherance of its crushed rock business and not in the furtherance of any transportation business. Dolese contends that being incidental and in furtherance of its crushed rock enterprise clearly makes it a "private carrier" under our statute. Dolese argues that the parties' stipulation supports this conclusion. In addition to the findings set forth in paragraphs (1), (2) and (3) supra, the parties stipulated that Dolese had been in the ready-mix concrete business in Oklahoma City and other locales in Oklahoma for many years and that:

"3. Dolese has hauled its ready-mix concrete to its customers in its ready-mix trucks from the inception of selling ready-mix concrete, but it never was required to maintain or own trucks for hauling aggregate until January of 1972 at which time Dolese acquired a fleet of aggregate trucks and started operating such trucks . . .

1. Both parties rely on *Collins-Dietz-Morris Co. v. The State Corporation Commission*, 154 Okl. 121, 7 P.2d 123 (1931). We find that case, decided in 1931 under the then-existing provisions of Laws 1929, c. 253, amending Laws of 1923, c. 113, not to be dispositive of the issues raised here under the present act, 47 O.S.1971, § 161 et seq.

2. Dolese contends that all of the following business enterprises unless they were operating exclusively within the limits of an incorporated city or town, would be subject to the Commission's regulatory authority if its crushed stone operations are subject to such authority. (a) All mud companies that deliver mud to oil field operations in trucks owned by the mud companies. (b) Supply stores of all nature and description that deliver supplies and make a delivery charge. (c) Grocery and retail stores that sell their products and deliver the same in their own trucks and make a charge therefor. (d) Laundry and dry cleaning establishments which provide services at one price and charge the customer for delivery service.

(a) Dolese has been successful in its operations because it has furnished quality products with a timely delivery. Up until 1972, it was able to do this by using aggregate trucks operated by third parties and available to it for hauling. However, in 1972, the services of third party trucking operations became inadequate. Dolese furnishes aggregate to the State of Oklahoma for its highway jobs and to various building and construction contractors. These heavy construction contractors have costly investments of labor and machinery in their operations and they require delivery of aggregate products on precise schedules. It became impossible for Dolese to meet these deliveries. Therefore, in order for Dolese to successfully stay in the business of furnishing aggregate to its customers, it became necessary in 1972 that it augment the trucking facilities available with its own trucks and during January of that year it acquired a fleet of trucks for this purpose.

(b) In January, 1972, Dolese started hauling a part of the products it produces in its own trucks and during the last fiscal year of operations of Dolese 20.3% of its aggregate hauling was in Dolese trucks and the remaining 79.7% of its products were hauled by third party trucking companies doing business in the area. The 20.3% of its hauling done by its own trucks insured that it always can get its products hauled on schedule and its truck fleet is necessary in this regard."

47 O.S.1971, § 161 provides:

"(G) The term "common carrier by motor vehicle" means any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate or interstate commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes.

(H) The term "contract carrier by motor vehicle" means any person which engages in transportation by motor vehicle of passengers or property in interstate or intrastate commerce, for compensation (other than transportation referred to in the preceding paragraph) under continuing contracts with one person or a limited number of persons . . .

(I) The term "private carrier of property by motor vehicle" means any person engaged in transportation upon public highways, of persons or property, or both, but not as a common carrier by motor vehicle, or a contract carrier by motor vehicle, and includes any person who transports property by motor vehicle *where such transportation is incidental to or in furtherance of any commercial enterprise of such person, other than transportation.*" emphasis added.

Dolese's basic argument is that its operations in hauling the crushed rock and making a separate charge for such hauling is "incidental to or in furtherance of any commercial enterprise of such person, other than transportation."

The parties cite two other terms in our Motor Carrier Act. Section 161(F) provides:

"The term 'motor carrier' when used in this act includes both a common carrier by motor vehicle and a contract carrier by motor vehicle, operating upon any public highway for the transportation of passengers or property for compensation or for hire or for commercial purposes, and not operating exclusively within the limits of an incorporated city or town within this state."

Section 161(O) defines the term " 'commercial purposes' as being all undertakings entered into for private gain or compensation, including all industrial pursuits, whether such undertakings involve the handling or dealing in commodities for sale or otherwise."

Although a carrier who transports "property for compensation or for hire or for commercial purposes" may be deemed a

"motor carrier" under § 161(F), the term "motor carrier" as defined in § 161(F) must be considered in connection with the term "private carrier" as defined by § 161(1). This is because the primary object of statutory construction is to ascertain the legislative intent. *Midwest City v. Harris*, Okl., 561 P.2d 1357 (1977). Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase whenever it occurs, except where a contrary intention plainly appears. 25 O.S.1971, § 2. *Stone v. Hodges*, Okl., 435 P.2d 165 (1967).

■ In construing § 161(F) with § 161(I) we find that a carrier may be deemed a private carrier when such carrier transports property for compensation or for hire or for commercial purposes when such transportation is incidental to or in the furtherance of any commercial enterprise of such carrier, other than transportation.

It is conceded that Dolese receives compensation for transporting crushed rock to its customers. However, Dolese may still be deemed a "private carrier" if such transportation is incidental to or in the furtherance of its crushed rock business.

■ It is evident by the stipulation that third-party trucking operations for Dolese's crushed rock business became inadequate and it became impossible for it to meet its contractual obligations. In order for Dolese to successfully stay in business of furnishing crushed rock to its customers, it became necessary for it to acquire a fleet of trucks to transport its crushed rock. Although Dolese trucking revenues constitute 15% of its total revenues, the profits from the trucking operations are only 3.43% of its total profits. The fact that Dolese's transportation charges generally conformed to the tariffs approved by the Commission is only one of the factors to be considered.

■ In our opinion, the stipulation of the parties conclusively shows that Dolese acquired the fleet of trucks to transport its crushed rock, and such transportation is incidental to and in furtherance of Dolese's crushed rock enterprise, and not in the furtherance of a transportation enterprise. The determination by the Commission that Dolese is deemed a "common carrier" is erroneous.

Order reversed.

BARNES, V. C. J., and WILLIAMS, HODGES, LAVENDER, SIMMS and OPALA, JJ., concur.

DOOLIN and HARGRAVE, JJ., dissent.

HARGRAVE, Justice, dissenting:

I must respectfully dissent.

The majority determines the transportation enterprise engaged in by Dolese comes within the ambit of a private carrier on the basis of factors obtaining in times long past and not upon present facts. The Court has said that the factors inducing Dolese to undertake the business of rock hauling *was* in furtherance of a commercial enterprise other than that of transportation and thus Dolese *is* presently a private carrier. Private carrier status is here determined on the circumstances and motivations surrounding the original assumption of the business and not an application of the applicable statutes to those facts which presently obtain. Thus the private carrier status may remain, through change of time and circumstance, so that, as here, the commercial enterprise of transportation comes to be conducted by a private carrier... To my mind the present fact that the crushed stone hauling business is now profitable to the corporation necessitates a finding that the exclusion of the commercial enterprise of transportation from the definition of private carrier found in 47 O.S.1971 § 161(I) applies here, now.

The appellant bases its assertion that its conduct is not regulatable by the Corporation Commission under the provisions of 47 O.S.1971 § 161 substantially upon the distinction that Dolese hauls only aggregate

belonging to it, or that it hauls only its own product, asserting that fact places it under Paragraph (I) of the last mentioned statute which reads:

(I) The term "private carrier of property by motor vehicle" means any person engaged in transportation upon public highways, of persons or property, or both, but not as a common carrier by motor vehicle, or a contract carrier by motor vehicle, and includes any person who transports property by motor vehicle where such transportation is incidental to or in furtherance of any commercial enterprise of such person, other than transportation.

It is noted at the outset that this subdivision makes no reference whatsoever to transportation of one's own product as a basis for classing that transporter as a private carrier. The clear import of (I) is that to qualify as a private carrier one must:

A. Transport persons or property:

1. Not as a common carrier.

2. Not as a contract carrier.

However, one may:

B. Transport property where that transportation is in furtherance of any commercial enterprise, as long as that commercial enterprise is not transportation.

The stipulations entered into in this proceeding, specifically p. 37 of the record, Stipulation # 7, states in part:

. . . The transportation charge is generally determined according to tariffs of the Oklahoma Corporation Commission governing charges allowed regulated carriers for movement of the product.

No question is presented refuting appellee's contention that those tariff schedules are designed to allow the transporter a profit. The fact that "generally" a profit is made off of the transportation of the product involved places that activity "generally" in the category excepted from Section (I), negating the private carrier status sought by appellant and that is, "transportation incidental to or in furtherance of any commercial enterprise other than transportation." The acceptance of a profit from the transportation is within the definition of the commercial enterprise of transportation, as the term "commercial enterprise" is defined in the statute, 47 O.S.1971 § 161(*O*):

(*O*) The term "commercial purposes" as used in this act is defined as describing all undertakings entered into for private gain or compensation, including all industrial pursuits, whether such undertakings involve the handling or dealing in commodities for sale or otherwise.

Under the clear language of the act, transportation for commercial purposes is excepted from the definition of private carrier. The last quoted statutory subdivision, 47 O.S.1971 § 161(*O*) provides that a commercial purpose is "all undertakings entered into for private gain," and would appear to specifically cover appellant in its provision that the term includes "handling or dealing in commodities for sale." The stipulated fact that the trucking operation nets a profit, and comprises approximately 15% of the gross revenue forestalls any conclusion that the transportation involved is incidental to the operation of the commercial enterprise of Dolese, as provided in the definition of private carrier in § 161(I) of Title 47 O.S.1971.

The Commission found in its order that Dolese was a common carrier under 47 O.S. 1971 § 161(G) which provides:

(G) The term "common carrier by motor vehicle" means any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate or interstate commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes.

Appellant repeatedly argues that the fact it transports aggregate owned by it and mined from its quarries removes that activity from the definition of common carrier because the fact it transports its own prop-

erty negates the inclusion of that conduct within the requirement found in (G) that it ". . . holds itself out to the general public to engage in the transportation by motor vehicle . . . of . . . property." The statute is not thusly limited and makes no reference to the ownership of property. The requirement of the statutory provision under consideration is satisfied by the delivery to the public of its goods, and whether passage of title to those goods occurs before or after transport is not determinative. The requirement of holding oneself out to the general public AS ENGAGING IN transportation is satisfied where the goods are delivered to the public.

I am authorized to state that DOOLIN, J., concurs in this dissent.