**Charlotte HOLLAND, Administratrix of the Estate of Donald Wayne Holland, deceased, Appellee,**

v.

**The DOLESE COMPANY, a Delaware corporation; Dolese Bros. Co., a co-partnership with Roger M. Dolese and the Dolese Company, a Delaware corporation, as co-partners thereof, Floyd C. Wright d/b/a Wright Trucking Company; Robert J. Anderson, Appellants.**

**Charlotte HOLLAND, Administratrix of the Estate of Donald Wayne Holland, deceased, Appellant,**

v.

**The DOLESE COMPANY, a Delaware corporation; Dolese Bros Co., a co-partnership with Roger M. Dolese and the Dolese Company, a Delaware corporation, as co-partners thereof, Floyd C. Wright d/b/a Wright Trucking Company; Robert J. Anderson, Appellees.**

**Nos. 49173, 49234.**

Supreme Court of Oklahoma.

March 23, 1982.

---

Richard James, Stroud, George W. Dahnke, Hastie & Kirschner, Oklahoma City, for appellee and appellant, Charlotte Holland.

Baker, Baker & Wilson, Oklahoma City, for appellants and appellees, The Dolese Co., et al.

PER CURIAM:

The parties will be identified as they appear below. Charlotte Holland, administratrix of the estate of Donald Wayne Holland, deceased, is the plaintiff. The Dolese Company, a Delaware Corporation, Dolese Bros. Co., a Co-Partnership with Roger M. Dolese and The Dolese Company, a Delaware Corporation, as co-partners thereof, are defendants.

This case involves two appeals, one by plaintiff (49,234) and the other (49,173) by defendants, both taken from a jury verdict and judgment in the District Court of Lincoln County.

Plaintiff, as surviving spouse and administratrix of the Estate of Donald Wayne Holland, brought a wrongful death action against all of the defendants below. Before the case went to the jury, defendants Leo A. and Gregory Dean Nowakowski settled with the plaintiff by paying her the sum of $20,000. No appeal was taken by defendants Floyd C. Wright d/b/a Wright Trucking Company (Wright) or Robert J. Anderson (Anderson).

The following facts are undisputed. Gregory Nowakowski brought his farm tractor which was pulling a 14 feet 5 inch wide spring-tooth harrow to a stop at the west end of a narrow bridge, yielding to oncoming traffic using the bridge, thereby partially blocking the east-bound lane of the highway. An east-bound vehicle stopped behind the farm tractor. A tow truck, west-bound and towing a vehicle on a boom, successfully traversed the bridge. At this approximate time, an east-bound tractor-trailer truck owned by Wright, leased by defendants, and operated by Wright's employee, Anderson, topped the crest of a small hill some 850 feet from the west end of the bridge. Seeing the stopped farm tractor with a vehicle stopped behind it and the oncoming tow truck, Anderson applied the brakes on the truck he was operating, only to discover that the brakes were partially ineffectual with the result that the left trailer wheels locked, producing a cloud of white smoke, and leaving skid marks 667 feet in length. The moment the tow truck passed the truck he was driving, Anderson turned the truck sharply to his left, crossed the lane for west-bound traffic, and struck plaintiff's decedent's small, white Simca which was following and approximately three carlengths behind the tow truck, instantly killing the plaintiff's decedent, driver of the Simca.

On the day of the accident, Anderson was engaged in hauling defendants' rock to defendants' customer, having made two trips empty and two loaded over the highway prior to the collision, and at the time of the accident was returning empty for another load of rock. The point of impact was 162 feet west of the bridge, 44 feet west of the vehicle stopped behind the farm tractor, and in the west-bound traffic lane.

Only those allegations of error urged in the briefs will be treated, the remainder being deemed waived.[1]

■ Defendants in their appeal first urge error on the part of the trial court in not instructing the jury that Wright was, as a matter of law, an independent contractor and not an employee of defendants.

The crux of this question is whether the alleged employer had the right to control, or purported or attempted to control, the manner of doing the job by the alleged servant, which resulted in the injury. If he did have that right or exercised it regardless of his right to exercise it, then the relationship is that of master and servant.[2] If the evidence concerning the status of the alleged employee is reasonably susceptible of but a single inference or conclusion, the

1. *Hawkins v. McElhanon*, Okl., 315 P.2d 667 (1957).

2. *Hunter Construction Company v. Marris*, Okl., 388 P.2d 5 (1963).

question is one of law to be decided by the court; but where the facts bearing on such issue are either disputed or conflicting inferences may be reasonably drawn from the known facts, it would be error to withhold the issue from the determination of the jury.[3]

The facts in the record before us relating to the relationship between defendants on the one hand, and Wright (truck owner) and Anderson (Wright's employee-truck driver) on the other, are not in dispute. Wright interviewed Anderson, gave him a driving test, checked his references, obtained a copy of Anderson's driving record, and hired him. Wright paid Anderson based upon a percentage of what Wright received on the truck's operation after deducting withholding and social security taxes. Wright instructed Anderson as to which truck to drive, the route to take, the number of loads to haul, and the weight the truck would carry. Wright purchased his own fuel and tires, performed routine maintenance on the truck and arranged for major repairs. He determined whether each of his trucks and each driver was ready and able to go to work, and his hours of work. Wright could reject any haul offered by defendants Dolese. There was no limit placed on Wright by defendants concerning the number of hauls or quantity hauled. Dolese merely advised defendants of the location of the product to be hauled from defendants' premises and its destination, and paid Wright a percentage of the proceeds received by defendants for the hauling operations of the truck. Defendants had no right to control the performance of the work by Wright or Anderson, and exercised none. The only inference which reasonable men might derive from the evidence is that Wright was an independent contractor and that Anderson was Wright's employee, and it was error for the trial court not to have so instructed the jury.[4]

■ Defendants' next assertion of error is that the trial court erred in submitting to the jury the question of whether defendants knew or should have known that Anderson was not a competent and safe driver and that Wright was not a competent contractor. In this connection defendants urge that the evidence was uncontradicted and that the trial court should have instructed as a matter of law that both were, under the evidence, competent. *Hudgens v. Cook Industries, Inc.*[5] defines a "competent contractor" as one who possesses the knowledge, skill, experience, personal characteristics, and available equipment which a reasonable man would realize that an independent contractor must have in order to do the work which he contracts to do without creating unreasonable risk of injury to others. *Hudgens* holds: "One of the conditions under which the employer is relieved of liability for the negligent acts of an independent contractor which he has employed is when the employer has borne the duty which requires him to exercise due care in selecting a competent contractor for the necessary work. (Citations omitted.)" But while the driving of a truck may become a dangerous undertaking under the facts present in Hudgens (hauling wheat while driving at an excessive speed on wet pavement in an overloaded tractor-trailer which had no speedometer, defective brakes, deficient springs, threadbare tires, and which evidence revealed to be in such poor mechanical condition that it would be unsafe to drive even if unloaded) which might impose liability upon the employer for his failure to exercise reasonable care in the selection of a competent carrier, if the employer knew or in the exercise of reasonable care should have known such facts and con-

3. *Flick v. Crouch*, Okl., 434 P.2d 256, 261 (1967); *Morain v. Lollis*, Okl., 371 P.2d 473 (1962); *Mistletoe Express Service v. Culp*, Okl., 353 P.2d 9, 12 (1960).

4. *Imperial Paving Company v. Russell*, Okl., 308 P.2d 278 (1957); *Hunter v. Marris, supra*, (note 2); *Miller v. Steelman Construction Company*, Okl., 282 P.2d 740 (1955); *Maryland Casualty Co. v. State Industrial Commission*, 148 Okl. 204, 298 P. 275 (1931); *Porter Const. Co. v. Burton*, 156 Okl. 72, 8 P.2d 64 (1932); *Ron-Jon Company, Inc. v. Pinson*, Okl., 555 P.2d 1014 (1976).

5. Okl., 521 P.2d 813 (1974).

ditions, it is only where reasonable men might draw conflicting conclusions on the matter that whether or not the employer was negligent in the discharge of his duty to select a competent contractor becomes a question to be determined by the trier of the facts. In the case before us, there was a total absence of any evidence that Wright was an incompetent contractor or that Anderson was an incompetent driver. That being the case, defendants' care or lack of it in selecting Wright as a contractor and in accepting Anderson as the driver could not be the proximate cause of the accident and resultant injuries. Unless such failure to select a competent contractor has a causal connection with the injury, such failure is not actionable.[6] Here, there was no evidence to explain the failure of the brakes on Wright's truck to fully function. The brakes functioned normally both immediately before and after the accident. There was no history of brake failures on Wright's trucks. The brakes had been regularly inspected during routine maintenance of the truck. Wright had thirty years of experience around trucks both as a driver and mechanic and performed a part of the truck maintenance himself. Anderson had been a truck driver for ten years. He had had only one accident prior to the one which is the subject of this suit and no charges resulted from that incident. He had only two tickets during that period. He had operated trucks in an eighteen state area. He was charged with no driving misconduct while in Wright's employ and had never been fired from any truck driving job. Wright's truck bore a current safety inspection sticker. The investigating officer at the scene found the truck to have good tires, good rubber, and that Wright's equipment "appeared to be a clean, good looking rig." While there was some evidence that Wright was in poor financial condition and willing to do business on a low margin of profit, there was no showing whatever that either Wright's poverty or a disposition toward price cutting resulted in defendants' engaging the services of an incompetent contractor or truck driver. Absent any such evidence, it was error to submit the issue of Wright's employing an incompetent contractor or driver to the jury.

Defendants next allege error on the part of the trial court in submitting to the jury the question of whether defendants were a "private carrier" or a "motor carrier" within the meaning of 47 O.S.1971, § 161 et seq. If defendants occupied the status of a "motor carrier" within the meaning of this statute, they were vicariously liable for the acts of Wright and Anderson by reason of the provisions of the statute and the statute's implementation by rules and regulations of the Oklahoma Corporation Commission.[7]

---

6. *L. B. Foster Company, Inc. v. Hurnblad,* (C.A. 9th Cir.), 418 F.2d 727 (1969).

7. The statutory provisions pertinent to the determination of this issue are as follows:
   "47 O.S.1971, § 161. Intent and application—Definitions
   It is hereby declared that it is necessary in the public interest to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such transportation and among such carriers; promote adequate, economical, efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages and unfair or destructive competitive practices; develop and preserve a highway transportation system properly adapted to the agricultural, industrial and commercial needs of the commerce of the State of Oklahoma and the national defense; and cooperate with the government of the United States, the departments of the State of Oklahoma, regulatory bodies of other states, and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this act.
   "The provisions of this act, except as hereinafter specifically limited, shall apply to the transportation of passengers or property by motor carriers over public highways of this state; and the regulations of such transportation, and the procurement thereof and the provisions of facilities therefor, is hereby vested in the Oklahoma Corporation Commission.
   \*   \*   \*   \*   \*   \*
   "(F) The term 'motor carrier' when used in this act includes both a common carrier by motor vehicle and a contract carrier by motor vehicle, operating upon any public highway for the transportation of passengers or property for compensation or for hire or for commercial purposes, and not operating ex-

Defendants first urge that the trial court usurped the exclusive jurisdiction of the Oklahoma Corporation Commission in submitting the issue to the jury. While § 161 does provide that "the regulations of such transportation (by motor carriers) * * is hereby vested in the Oklahoma Corporation Commission," § 162 states: "The Commission is hereby vested with power and authority, and it shall be its duty to: * * * (4) to prescribe, with respect to the use by motor carriers (under leases, contracts, or other arrangements) of motor vehicles not owned by them, * * * such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles." The Corporation Commission has exercised its jurisdiction and has implemented the statutes with regulations providing for vicarious liability of owners who transport property by use of vehicles belonging to others. It is apparent

clusively within the limits of an incorporated city or town within this state. * * *.

"(G) The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate or interstate commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes.

"(H) The term 'contract carrier by motor vehicle' means any person which engages in transportation by motor vehicle of passengers or property in interstate or intrastate commerce, for compensation (other than transportation referred to in the preceding paragraph) under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer.

"(I) The term 'private carrier of property by motor vehicle' means any person engaged in transportation upon public highways, of persons or property, or both, but not as a common carrier by motor vehicle, or a contract carrier by motor vehicle, and includes any person who transports property by motor vehicle where such transportation is incidental to or in furtherance of any commercial enterprise of such person, other than transportation.

\* \* \* \* \* \*

"(O) The term 'commercial purposes' as used in this act is defined as describing all undertakings entered into for private gain or compensation, including all industrial pursuits, whether such undertakings involve the handling or dealing in commodities for sale or otherwise.

§ 162. Powers and duties of Commission

"The Commission is hereby vested with power and authority, and it shall be its duty to: (1) supervise and regulate every motor carrier whether operating between fixed termini or over a regular route or otherwise and not operating exclusively within the limits of an incorporated city or town in this State; (2) to fix or approve the maximum or minimum, or maximum and minimum rates, fares, charges, classifications and rules and regulations pertaining thereto, of each motor carrier; (3) to regulate and supervise the accounts, schedules and service of each such motor carrier; and for the conservation of the public highways; (4) to prescribe, with respect to the use by motor carriers (under leases, contracts, or other arrangements) of motor vehicles not owned by them, in the furnishing of transportation of property, regulations requiring that any such lease, contract, or other arrangement shall be in writing and be signed by the parties thereto, and shall specify the period during which it is to be in effect, and shall specify the compensation to be paid by the motor carrier, and requiring that during the entire period of any such lease, contract, or other arrangement a copy thereof shall be carried in each motor vehicle covered thereby; and such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles; * * *."

The above statutes were implemented by Rules and Regulations of Motor Carriers of the Corporation Commission, amended effective May 10, 1974, by the following pertinent regulation:

"Rule 26—Leasing of Equipment

"(a) A motor carrier may operate equipment not owned by it only upon the following conditions:

(1) The contract, lease or other arrangements for use thereof * * * (c) shall provide for exclusive possession and control; and for complete responsibility in respect thereto, by the lessee or user; * * *."

to us that the last quoted statutory provisions were enacted by the legislature at least partially for the benefit of third parties such as the plaintiff. The primary object of statutory construction is to ascertain the legislative intent.[8] It follows that the issue of whether defendants were a "motor carrier" within the meaning of the act and therefore vicariously liable for the acts of Wright and Anderson at the time of the accident was an issue properly for the jury. Unfortunately, since the verdict rendered at the trial was a general verdict, we are unable to ascertain whether the jury imposed liability vicariously under the statute or under the theory of respondeat superior, and therefore the cause must be remanded for re-trial on this issue.[9]

While this cause must be remanded for a new trial, we will briefly consider the allegations of error presented by plaintiff's appeal.

■ Plaintiff alleges error on the part of the trial court in submitting the question of contributory negligence on the part of plaintiff's decedent to the jury, and in support thereof, relies primarily upon *Carnes v. White*.[10] In *Carnes*, we quoted with approval from *Taylor v. Birks*, Okl., 325 P.2d 737: "In order for it to be necessary to instruct on the question of contributory negligence there must be some evidence produced at the trial, either by the plaintiff or defendants, from which contributory negligence could be *inferred or presumed* (emphasis supplied)" and added, "[s]ome evidence of contributory negligence must be shown at the trial before the defendant is entitled to an instruction on contributory negligence." The record before us does not disclose any evidence of contributory negligence on the part of the plaintiff's decedent which could be the basis for reducing the plaintiff's damages under our comparative negligence law. The evidence was that the closest Mr. Holland's Simca automobile was behind the wrecker as they crossed the bridge was three car lengths. In view of the quickness with which the accident occurred, there was no evidence that Mr. Holland could have taken any effective evasive action prior to the collision. At most it could be said he was able to turn his vehicle to the right just before the impact so that the point of impact between his small automobile and the large truck occurred nine (9) feet over the center line on Mr. Holland's side of the roadway. Such evidence does not support an inference or presumption that Mr. Holland was negligent or that if he was negligent such was a contributing factor to the accident and his death. Under such circumstances, it was error to submit the issue of contributory negligence to the jury. *Carnes v. White, supra*.

■ Plaintiff complains because the trial judge did not permit evidence as to the effect of future inflation upon loss of future earnings of decedent in connection with plaintiff's claim for damages. This court has on many occasions recognized the effect of the reduced purchasing power of the dollar upon the dollar amount of verdicts upheld as not being excessive when compared with dollar amounts awarded in previous years.[11] To hold that the effect of inflation upon the purchasing power of the dollar is to be considered is but to give judicial recognition to economic reality. While we find no Oklahoma cases directly upon whether an inflation factor may be urged by the claimant in seeking damages

---

8. *Midwest City v. Harris*, Okl., 561 P.2d 1357 (1977).

9. Since this appeal was filed, the case of *Dolese Bros. Co. v. Privett*, Okl., 622 P.2d 1080 (1981) has been handed down. That case determined that Dolese, under the facts then present, was a "private carrier" as distinguished from a "common carrier" within the meaning of 47 O.S. 1971 § 161 et seq., but did not determine whether Dolese was a "contract carrier" and for that reason a "motor carrier"—the issue, we hold here, which was properly left to the jury.

10. Okl., 511 P.2d 1101 (1973).

11. *Oklahoma Ry. Co. et al. v. Wilson*, Okl., 227 P.2d 392 (1959) *St. Louis-San Francisco Ry. Co. v. King*, Okl., 278 P.2d 845; *Y & Y Cab Co. v. Smith*, Okl., 289 P.2d 964; *WeGo Perforators v. Hilligoss*, Okl., 397 P.2d 113 (1964); *Rogers v. Worthan*, Okl., 465 P.2d 431 (1970).

for loss of future earnings, we are greatly persuaded by the arguments of those cases of other states which do allow inflation to be taken into consideration. Compensation or damages means compensation in money, and the value of money lies not in its intrinsic worth but in what it will buy.[12] We therefore hold that evidence of the prospect of future inflation or deflation and its effect upon the future purchasing power of the dollar may be competent and relevant in proving loss of future earnings in a personal injury action.

Plaintiff further complains because on the issue of damages the trial judge refused to admit evidence of decedent's prospective promotions and merit increases anticipated over his productive years of employment had his employment not been terminated by his death. Defendants counter with the assertion that such evidence is too remote and speculative. In *National Valve & Mfg. Co. v. Wright,*[13] we held it was not error to admit testimony of a witness that he had offered a plaintiff's decedent a job which would pay him a larger salary and which had more chances of advancement than the job decedent had at the time of his death. There we said (774): "In 25 C.J.S., Death, § 123, p. 1292, it is said that the weight of authority is to the effect that the evidence as to the earning capacity of decedent is not necessarily limited to a showing of what he was earning at the time of his death, and that evidence tending to show the probability of decedent's earning a greater income may be received." While it is true that evidence as to probable advancements in employment and merit increases accruing to a decedent had his death not terminated his opportunity to realize them is speculative, it is no more so than that the decedent's longevity would coincide with that fixed for his age group in mortality tables, and such evidence, if characterized by reasonable certainty, ought to be admitted.[14]

Plaintiff's last claim of error pertains to the question of whether the trial court erred in refusing to apply and award prejudgment interest on the amount of the jury award under 12 O.S.1971, § 727, which allows interest on a "verdict for damages by reason of personal injuries," it being the contention of defendants that the statute does not apply to death actions. These contentions are resolved in the holding of the Court of Appeals in *Cartwright v. Atlas Chemical Industries*[15] wherein it was determined that for the purposes of the application of 12 O.S.1971, § 727 an action for wrongful death is an action for personal injuries and prejudgment interest must be added to the award in the verdict.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with our rulings herein.

BARNES, V. C. J., and LAVENDER, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

IRWIN, C. J., and HODGES, OPALA and WILSON, JJ., dissent.

---

**12.** 22 Am.Jur.2d Damages § 87; 12 A.L.R.2d 621 § 3.

**13.** Okl., 240 P.2d 769 (1951).

**14.** *United States v. Furumizo,* 381 F.2d 965 (9th Cir. 1967); 22 Am.Jur.2d *Damages,* § 93; 15 A.L.R.2d 418 et seq.; *Hampton v. State Highway Commission,* 209 Kan. 565, 498 P.2d 236.

**15.** Okl.App., 593 P.2d 104 (1979).